## WONG KWAI TONG *v.* IRENE CHOY YIN.

### No. 1937.

ARGUED MARCH 20, 1930.　　　　　　DECIDED OCTOBER 23, 1930.

PERRY, C. J., BANKS AND PARSONS, JJ.

604

OPINION OF THE COURT BY PERRY, C. J.
(Banks, J., dissenting.)

This is an action of ejectment. Trial was had without jury and judgment was rendered for the plaintiff.

The land in question was by deed dated March 8, 1928, conveyed to the plaintiff by one Choy Yin who at one time was the husband of the present defendant. Mr. and Mrs. Choy Yin were divorced by decree of a judge of the circuit court of the first judicial circuit, dated March 24, 1921. In a suit in equity brought for the purpose of securing a cancellation of the deed on the ground of fraud, the relief prayed for was denied by this court. *Henry Smith, Receiver,* v. *Choy Yin and Wong Kwai Tong,* 30 Haw. 948. This court there held that even assuming that the grantor had fraudulently intended by his conveyance to defeat his creditors the grantee did not share in that fraudulent intent and took without knowledge or notice of any equities of others. The defense in the ejectment case was that, by virtue of certain orders, decrees and stipulations made and entered into in the divorce case the defendant was entitled to the possession of the property.

The clerk's minutes, in the divorce case, under date of March 24, 1921, contained the following entry: "The court grants the divorce as prayed for, on the ground of extreme cruelty, effective upon the signing of the decree of divorce. The libellant is awarded the custody of the minor chil-

dren of the libel and the use of the house she is now occupying (belonging to the libellee).'' The divorce decree of the same date provides *inter alia* that the "libellee be * * * required to furnish a suitable home for libellant and her children for the lifetime of libellant." As appears from the language of the clerk's minute just quoted it was entered, or at least the oral order thereby recorded was uttered, before the entry of the decree of divorce. The decree supplanted the earlier oral order or expression by the court of intention to make an order or decree. The decree is the last and formal statement of what the court decided and awarded. There is no ambiguity in the decree. What it required was that the husband furnish "*a* suitable home" for the wife and children. Any suitable home would meet the requirements of that decree. It was not thereby required that the husband should furnish to the wife and children the home which the parties had theretofore occupied. It would be entirely in conformity with this feature of that decree that the husband should convey the old home to another and provide a new and suitable home for his family.

Under date of December 7, 1926, an entry in the clerk's minutes in the same court and cause was made reading: "By stipulation of counsel, the court ordered that Choy Yin, the libellee, pay alimony in the sum of $50.00 per month, beginning December 1, 1926; Mrs. Choy Yin to have the right to occupy the home she is now living in."

Section 2979, R. L. 1925, reads as follows: "Permanent alimony; maintenance of children. Upon granting a divorce for the adultery or other offense amounting thereto, of the husband, the judge may make such further decree or order against the defendant, compelling him to provide for the maintenance of the children of the marriage, and to provide such suitable allowance for the wife, for her support, as the judge shall deem just and reason-

able, having regard to the ability of the husband, the character and situation of the parties, and all other circumstances of the case." This is the only section of our statutes relating to an allowance by the court in a divorce case for the support of the wife. In *Nobrega* v. *Nobrega*, 13 Haw. 654, it was held by this court that the divorce court has no power under this statute to order a division of the husband's real estate or to vest title to a part thereof in the wife. See also *Gomes* v. *Gomes*, 26 Haw. 128. An order compelling the husband to furnish a certain named house and lot to the wife for her home for her life or until further order of the court would be, in effect, a setting apart to her of an interest in the land and would upon the authority of *Nobrega* v. *Nobrega* be equally beyond the power of the divorce court. In our opinion, to make such an award is to act in an excess of jurisdiction or without jurisdiction at all. It is a question of jurisdiction as distinguished from mere error of procedure. It is true that the divorce court had jurisdiction of the parties and of the general subject matter of the severance of their marital relations. But there were limitations imposed by the statute upon the power of the court in such cases and one of the limitations was that stated in the *Nobrega* case. It is well established that even when a court has jurisdiction over the parties and the subject matter, yet it may lack jurisdiction to make the particular decree which it attempts to make; and in such a case the particular decree made in excess of jurisdiction is void and may be attacked collaterally. "Although a court may have jurisdiction over the parties and the subject matter, yet if it makes a decree which is not within the powers granted to it by the law of its organization, its decree is void." *United States* v. *Walker*, 109 U. S. 258, 266.

"It is a well settled principle that although a court may have jurisdiction of a case yet if it appears from the

record that it did not have jurisdiction to enter the decree and the particular judgment thereon that it did enter then that decree and judgment may be collaterally impeached." *Ritchie* v. *Sayers,* 100 Fed. 520, 532.

"A statement of the rule in most of the cases is that if the court has jurisdiction of the subject matter and of the parties, no error in exercising that jurisdiction may be urged collaterally. Such statement is sufficiently exact in those cases, as the objections there urged go only to these two elements of jurisdiction. But there is another element of equal importance. Jurisdiction, in its fullest sense, is not restricted to the subject matter and the parties. If the court lacks jurisdiction to render or exceeds its jurisdiction in rendering the particular judgment in the particular case, such judgment is subject to collateral attack even though the court had jurisdiction of the parties and of the subject matter." *People* v. *Burke,* 72 Colo. 486, 504.

"The doctrine invoked by counsel, that, where a court has once acquired jurisdiction, it has a right to decide every question which arises in the cause, and its judgment, however erroneous, cannot be collaterally assailed, is undoubtedly correct as a general proposition, but, like all general propositions, is subject to many qualifications in its application. All courts, even the highest, are more or less limited in their jurisdiction: they are limited to particular classes of actions, such as civil or criminal; or to particular modes of administering relief, such as legal or equitable; or to transactions of a special character, such as arise on navigable waters, or relate to the testimentary disposition of estates; or to the use of particular process in the enforcement of their judgments. *Norton* v. *Meador,* Circuit Court for California. Though the court may possess jurisdiction of a cause, of the subject matter, and of the parties, it is still limited in its modes of procedure, and in the extent and character of its judgments. It must

act judicially in all things, and cannot then transcend the power conferred by the law. If, for instance, the action be upon a money demand, the court, notwithstanding its complete jurisdiction over the subject and parties, has no power to pass judgment of imprisonment in the penitentiary upon the defendant. If the action be for a libel or personal tort, the court cannot order in the case a specific performance of a contract. If the action be for the possession of real property, the court is powerless to admit in the case the probate of a will. Instances of this kind show that the general doctrine stated by counsel is subject to many qualifications. The judgments mentioned, given in the cases supposed, would not be merely erroneous: they would be absolutely void; because the court in rendering them would transcend the limits of its authority in those cases." *Windsor* v. *McVeigh,* 93 U. S. 274, 282.

"It is no answer to this to say that the court had jurisdiction of the person of the prisoner, and of the offence under the statute. It by no means follows that these two facts make valid, however erroneous it may be, any judgment the court may render in such case. If a justice of the peace, having jurisdiction to fine for a misdemeanor, and with the party charged properly before him, should render a judgment that he be hung, it would simply be void. Why void? Because he had no power to render such a judgment. So, if a court of general jurisdiction should, on an indictment for libel, render a judgment of death, or confiscation of property, it would, for the same reason, be void. Or if on an indictment for treason the court should render a judgment of attaint, whereby the heirs of the criminal could not inherit his property, which should by the judgment of the court be confiscated to the State, it would be void as to the attainder, because in excess of the authority of the court, and forbidden by the Constitution." *Ex parte Lange,* 18 Wall. 163, 176, 177.

In our opinion the judicial order providing that the wife should "have the right to occupy the home she is now living in" was beyond the jurisdiction of the court and void. The stipulation of the parties could not and did not confer upon the court the jurisdiction that it otherwise lacked to make the order. As a judicial decree the provision has no validity.

Assuming that the stipulation has some force as a contract of the parties and that it is binding on the husband,— what was the contract? It was that the wife should have the right to occupy the home. No period of time for the occupation was stated. If the court were to say now that it was to continue for the remainder of the wife's life, or for the remainder of the husband's life, or during the minority of the children, or until the wife remarries, it would be adding a term not stipulated by the parties. This, of course, the court cannot do. The contract as made was terminable at any time at the option of the husband,— at the risk of having the court make some other provision for the wife in lieu of that rescinded. Even the judicial decree, if it had had any validity as such, would have been terminable at any time at the option of the court. Assuming that the purchaser, the present plaintiff in the action of ejectment, would be bound, upon the theory of an estoppel, to the same extent that the husband would be bound, that would be only until the revocation by the husband of the permission to the wife to occupy the home. If the purchaser was bound to make inquiry and had made inquiry, he would have found merely that there was a contract by the husband, terminable at his will. It need hardly be added that the deed from the husband to Wong Kwai Tong was in effect a termination or revocation of the husband's consent.

The judgment of the court below is affirmed.

*M. K. Ashford* (*Thompson, Beebe & Winn* on the briefs) for plaintiff in error.

*F. Schnack* (also on the briefs) for defendant in error.

DISSENTING OPINION OF BANKS, J.

This is an action of ejectment and was tried by the court below without a jury. Decision and judgment were in favor of the plaintiff both as to title to the property involved and the right to its possession. The defendant brings the case here on a writ of error.

The plaintiff's legal title to the premises is not disputed. He acquired title by a deed of conveyance from Choy Yin, who was formerly the husband of the defendant. This conveyance was held, in *Smith* v. *Choy Yin*, 30 Haw. 948, to be valid as between Irene Choy Yin (the defendant herein) and Wong Kwai Tong (the plaintiff herein). The defendant contends, however, that notwithstanding this the plaintiff is not entitled at this time to possession and that the decision and judgment now under review, so far as they relate to possession, are erroneous.

On March 29, 1921, Irene Choy Yin obtained a decree of absolute divorce from her husband, Choy Yin. In addition to dissolving the bonds of matrimony on the ground of extreme cruelty the decree provides that "the care, custody and control of Sau Chun Choy, Sau Choy Choy, Sau Tai Choy and Choy Con Some, together with an infant child born since the filing of the libel herein, children of the parties hereto, be given to libelant, subject to libelee's right to visit said children at all reasonable times on the condition that libelee does not persecute, annoy or ill-use libelant in any way;" that libelee pay forthwith to libelant one hundred and fifty dollars back alimony, and one hundred and fifty dollars additional counsel fee to libelant's attorneys. And it was further ordered, adjudged and decreed that for the support and maintenance of libelant

and her children libelee be required to furnish a suitable home for libelant and her children during the lifetime of libelant.

No appeal was ever taken from this decree. On the day the divorce was granted, but before the decree was signed, the following minute order was made: "The court grants the divorce as prayed for, on the ground of extreme cruelty, effective upon the signing of the decree of divorce. The libelant is awarded the custody of the minor children of the libel and the use of the house she is now occupying (belonging to the libelee)." On December 7, 1926, the court made the following minute order: "By stipulation of counsel the court ordered that Choy Yin, the libelee, pay alimony in the sum of $50.00 per month beginning December 1, 1926; Mrs. Choy Yin to have the right to occupy the home she is now living in; Choy Yin to have the right to visit the children at reasonable times; Choy Yin to be given credit for $35.00 already paid this month, leaving a balance due for December of $15.00." The premises upon which the defendant and her children were living when the decree of divorce was rendered and the minute orders were made and upon which they have lived continuously ever since are the same premises as those involved in the instant action.

The first question presented for determination is whether the circuit judge who entered the decree of divorce and the minute orders above quoted had jurisdiction to order the libelee to provide a specific home for the libelant and her minor children during the life of the libelant. In considering this question it is important to bear in mind that neither the decree of divorce nor the minute orders were ever appealed and that so far as the last minute order is concerned it was made upon the express stipulation of the parties. Of course if the circuit judge went outside the subject matter over which he had jurisdiction and made

a decree or order utterly foreign to the issues he was empowered to determine such decree or order would be entirely void and open to the collateral attack made upon it in the instant case even though the decree or order was made by consent. On the other hand, if the decree or order relates to some feature of the case that is germane to the general subject over which the court had jurisdiction it cannot be collaterally attacked even though it was erroneously made.

It is often difficult to decide whether a decree or order is void because made in excess of jurisdiction or merely voidable because erroneously made. As was said by Judge Learned Hand in a dissenting opinion in *Ex parte Craig,* 282 Fed. 138, 156: "There seems to be no fixed rule to tell what errors of the court below will be treated as jurisdictional." The general rule is perhaps nowhere better stated than in *Miller* v. *Rowan,* 251 Ill. 344, where the court said (p. 348): "Jurisdiction of the subject matter is the power to adjudge concerning the general question involved, and if a bill states a case belonging to a general class over which the authority of the court extends, the jurisdiction attaches and no error committed by the court can render the judgment void. If the court has jurisdiction, it is altogether immaterial, when the judgment is collaterally called in question, how grossly irregular or manifestly erroneous its proceedings may have been. The judgment cannot be regarded as a nullity, and cannot, therefore, be collaterally impeached. Such a judgment is binding on the parties and on every other court unless reversed or annulled in a direct proceeding and is not open to collateral attack. If there is a total want of jurisdiction in a court its proceedings are an absolute nullity and confer no right and afford no protection but will be pronounced void when collaterally drawn in question."

Section 2979, R. L. 1925, which must be looked to for

the subjects over which a circuit judge who grants a divorce to a wife for the misconduct of her husband is given jurisdiction is as follows: "Upon granting a divorce for the adultery or other offense amounting thereto, of the husband, the judge may make such further decree or order against the defendant, compelling him to provide for the maintenance of the children of the marriage, and to provide such suitable allowance for the wife, for her support, as the judge shall deem just and reasonable, having regard to the ability of the husband, the character and situation of the parties, and all other circumstances of the case."

The general subjects of the court's jurisdiction are the maintenance of the children of the marriage and the support of the wife. To the end that these subjects might be effectively dealt with the court is empowered to decree or order that the husband make such provision for the maintenance of the children and such allowance for the support of the wife as the judge shall under the circumstances deem just and reasonable. There is no doubt in my mind that the decree and orders made by the judge in the divorce case related to the maintenance of the children of the marriage and the support of the wife and are therefore germane to the subjects over which the court had jurisdiction. It may very well be that the legislature, in authorizing the court to require the husband to provide a suitable allowance for the wife, intended that such allowance should be provided in money only. Conceding this, but bearing in mind that one of the subjects over which the court had jurisdiction was the wife's support, the requirement of the judge that in addition to providing a money allowance for her support the husband should also provide a home for her during her life, while erroneous so far as the home was concerned and therefore open to attack on appeal, was not void for lack of jurisdiction of the subject matter.

In *Swift & Co.* v. *United States,* 276 U. S. 311, a consent decree was entered in the United States district court in a case involving the Anti-Trust Act with the view of preventing a monopoly in meat and other food products. On a motion to vacate the decree the jurisdiction of the court to enter it was attacked on eight separate grounds. One of these grounds was that the injunction prohibited intrastate transactions and thus overstepped the Federal powers. The court said (p. 331): "If the court, in addition to enjoining acts that were admittedly interstate, enjoined some that were wholly intrastate and in no way related to the conspiracy to obstruct interstate commerce, it erred; and had the defendants not waived such error by their consent, they might have had it corrected on appeal. But the error, if any, does not go to the jurisdiction of the court. The power to enjoin includes the power to enjoin too much." The subject matter of the court's jurisdiction was violations of the Anti-Trust Act. In its exercise the court had the power to enjoin interstate transactions but not the power to enjoin intrastate transactions. It was nevertheless held that an injunctive decree entered by consent, which included intrastate transactions, was not, for lack of jurisdiction of the subject matter, void as to such transactions. So in the instant case, the divorce court had jurisdiction over the support of the wife and if in its exercise the judge required the husband to make a specific provision for her support, not contemplated by the statute, it was error of decision, reviewable on appeal, and not a jurisdictional error which rendered the requirement utterly void. The power to require the husband to make suitable provision for his wife and dependent children includes the power to require him to provide too much and if the husband consents to an error of judgment committed in the exercise of the power he cannot collaterally attack

it. The time for him to object is when the error is committed.

In *Uhl* v. *Irwin*, 41 Pac. (Okl.) 376, Eliza Irwin obtained a divorce from her husband, Lorenzo Irwin. The court granting the divorce decreed that she should have certain specified personal property belonging to her husband as alimony. Later the husband mortgaged this property to George P. Uhl for a valuable consideration. Uhl brought an action of replevin against Mrs. Irwin for recovery of the property. One of the questions presented and decided adversely to Uhl was whether the court granting the divorce had jurisdiction to award the property in question to Mrs. Irwin as alimony. Judgment was rendered against Uhl and the case was taken by him to the supreme court, which affirmed the judgment. In passing on the question of jurisdiction the court said (p. 378): "Plaintiff in error further objects to the validity of the judgment against him, because the decree rendered in the probate court in the divorce proceeding grants Eliza J. Irwin alimony by decreeing her specific personal property. The decree of the probate court was erroneous in this respect. The decree should have granted alimony in a gross sum of money, and not in specific property. * * * Although the decree of the probate court was erroneous, we hardly think that it was void. While, had the defendant in that case saved the proper exceptions, he could have procured a reversal of the judgment on that question on appeal, Mr. Uhl cannot attack it collaterally; and particularly should this be true when he is attempting to assert a prior claim to the property which was the subject of this decree by a chattel mortgage taken in violation of the restraining order of the court, which was in full force and effect when the mortgage was given."

It is claimed by Wong Kwai Tong, plaintiff herein, that this question of jurisdiction has been twice decided

616

by this court, once in *Nobrega* v. *Nobrega,* 13 Haw. 654, and again in *Gomes* v. *Gomes,* 26 Haw. 128. The *Nobrega* case was a suit for divorce and the *Gomes* case was for separation from bed and board. In each of these cases the circuit judge ordered that the wife should have in fee simple a designated portion of the husband's real property. In each case this order was brought directly here for review and in each case the order was reversed. One of the contentions made by the libelant in the *Nobrega* case was that the libelee was estopped from challenging the validity of the order because while testifying as a witness he said he would prefer to pay alimony in land rather than in money. In commenting on this the court said (p. 658) : "The fact that the libellee expressed a willingness to pay alimony in land rather than money certainly cannot estop him from contesting the power of the court to compel him to give one-half of his land. It nowhere appears that the libellee consented to the decree as entered or expressed his satisfaction with it. The facts of this case distinguish it from those where the appellate courts have affirmed the decree on the theory of the consent of the parties. See *Calame* v. *Calame,* 25 N. J. E. 548; *Crews* v. *Mooney,* 74 Mo. 26." This language at least indicates a doubt as to what the court would have decided if the libelee had consented to the order. If it had been thought that the order was void for lack of jurisdiction to make it, and not merely voidable because an error of decision, the reference to the New Jersey case and the Missouri case would seem to be without significance. Speaking on page 661 the court said: "By the 'unwritten law of the United States,' a court cannot award to the wife specific property as alimony. Stewart, Marriage and Divorce, Sec. 374; 1 Bishop, Marriage, Divorce and Separation, Sections 1383 to 1421. This power is given to the courts in many of the states by statutes. We do not think that the language of our

statute is broad enough to show a clear intention on the part of the legislature to confer this power on the circuit court nor do we feel authorized to extend the terms of the statute by interpretation so as to confer a power that the legislature may not have intended to give." In the *Gomes* case the court applied the same rule to an action for separation from bed and board as was applied in the *Nobrega* case to an action for divorce and said in its syllabus: "The trial judge is not authorized upon granting a separation to order a conveyance to the wife of the real estate of the husband and to vest title therein in her." In neither the *Nobrega* case nor the *Gomes* case is the question of the court's jurisdiction to enter the order complained of discussed or decided. The court's lack of authority is discussed and decided, but courts, in the exercise of their jurisdiction over the subject matter, often do unauthorized things which, if objected to, are, on appeal, reversible, but which, if consented to, are not open to attack. This is fully exemplified in *Swift & Co.* v. *United States, supra.*

For the foregoing reasons it is my conclusion that the decree and orders of the circuit judge, now under consideration, are not void for lack of jurisdiction to make them. This being so, it seems clear that if Choy Yin, against whom the decree and orders were made in the divorce suit, and who was bound by them, had retained title to the premises in question and by an action of ejectment had sought to dispossess Irene Choy Yin, he would have been precluded from gainsaying the rightfulness of her possession and would have failed in the action. The doctrine of estoppel or bar by judgment has been too long embodied in the law to be now the subject of dispute.

Freeman on Judgments (V. 2, § 626,) makes the following trenchant quotation from a case cited by him in the note: "The very object of instituting courts of justice is,

that litigation should be decided, and decided finally. That has been felt by all jurists. It is long since a reason has been assigned why judgments should be considered final, and should not be ripped up again,—Ne lites sint immortales, dum litantes sunt mortales. Human life is not long enough to allow of matters once disposed of being brought under discussion again; and for this reason it has always been considered a fundamental rule that when a matter has once become res judicata, there shall be an end to the question." In *Hart Steel Co.* v. *Railroad Supply Co.*, 244 U. S. 294, the court said (p. 299) : "This doctrine of *res judicata* is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts to the end that rights once established by the final judgment of a court of competent jurisdiction shall be recognized by those who are bound by it in every way, wherever the judgment is entitled to respect."

Is Wong Kwai Tong in any better position? I think not. He acquired whatever interest he has in the premises after the decree and orders in the divorce suit were entered and thus became Choy Yin's privy in estate, and under a well recognized rule of law is bound by the decree and orders to the same extent that Choy Yin is bound. "Where one claims in privity with another, whether by blood, estate, or law, he is in the same situation with such person as to any judgment for or against him; for judgments bind privies as well as parties." 1 Freeman on Judgments, § 438, quoting *Woods* v. *Montevallo C. & T. Co.*, 84 Ala. 560, 5 A. S. R. 393, 3 So. 475. "The rule is well settled and elementary that a judgment is as conclusive on privies as on the parties themselves. 'The term "privity" denotes mutual or successive relationship to the same

rights of property.' This relationship is produced either by operation of law, by descent, or by voluntary or involuntary transfers from one person to another." 1 Freeman on Judgments, *supra*. (*Bertelmann* v. *Lucas, ante,* 71, 74.)

Under this rule Wong Kwai Tong can no more question the validity of the decree and orders upon which Irene Choy Yin relies to support her right to possession than could Choy Yin if he were the plaintiff in the instant suit. I think the decision of the court below, so far as it relates to possession of the premises involved, is erroneous and should therefore be reversed. This conclusion is, in my opinion, not only sound in law but preeminently just.