200 P.3d 370

BANK OF HAWAII,
Respondent/Plaintiff–Appellee

v.

Michael L. SHINN, Petitioner/Defendant–
Appellant

and

Bays, Deaver, Hiatt, Kawachika &
Lezak, a Hawai'i partnership,
Defendant–Appellee

and

Donald T. Eovino; Kahala Ventures, a Ha-
wai'i general partnership; First Hawai-
ian Bank; Donald H. Wilson, as Trustee
of the Jerry T. Lynn Charitable Remain-
der Trust; B & T Enterprises, a Califor-
nia corporation; Richard Wallace and
Patricia Davison Wallace, as Trustees of
the Muldoon & Associates Money Pur-
chase Plan and Trust; Universal Securi-
ties Co., LTD., a Japan corporation;
Loren H. Cook; Darcy H. Cook; J. Rog-
er Allen; Cathreine G. Allen; John Does
1–50; Jane Does 1–50; Doe Partnerships
1–50; Doe Corporations 1–50; Doe Enti-
ties 1–50; and Doe Governmental Units
1–50, Defendants.

No. 27832.

Supreme Court of Hawai'i.

Dec. 29, 2008.

Reconsideration Denied Feb. 17, 2009.

Gary Victor Dubin, Honolulu (Lon Huy Vu with him on the application), for petitioner/defendant-appellant.

Peter Van Name Esser, Honolulu (Mark T. Shklov and Michel A. Okazaki with him on the brief & response), for respondent/plaintiff-appellee Bank of Hawaii.

MOON, C.J., ACOBA, and DUFFY, JJ.; with LEVINSON, J., concurring separately, and dissenting, with whom NAKAYAMA, J., joins.

Opinion of the Court by ACOBA, J.

Petitioner/Defendant–Appellant Michael L. Shinn (Petitioner) seeks review of the judgment of the Intermediate Court of Appeals (ICA), filed on March 30, 2008, pursuant to its published opinion filed on February 29, 2008,[1] affirming the March 7, 2006 Order of the first circuit court (the court)[2] denying Petitioner's Hawai'i Rules of Civil Procedure (HRCP) Rule 60(b) (2008) motion (1) to set aside the court's December 18, 2003 Order granting the motion of Respondent/Plaintiff–Appellee Bank of Hawaii (Respondent) to extend a deficiency judgment against Petitioner entered on December 21, 1993, and (2) to expunge the court's December 21, 1993 joint and several judgment against Petitioner. *See Bank of Hawaii v. Shinn,* 118 Hawai'i 132, 138, 185 P.3d 880, 886 (App.2008).

We hold (1) that Hawai'i Revised Statutes (HRS) § 657–5 (Supp.2007)[3] controls over

---

1. The opinion was authored by Associate Judge Daniel R. Foley and joined by Chief Judge Mark Recktenwald and Associate Judge Craig H. Nakamura.

2. The Honorable Karen N. Blondin presided.

3. HRS § 657–5 provides as follows:

Unless an extension is granted, every judgment and decree of any court of the State shall be presumed to be paid and discharged at the expiration of ten years after the judgment or decree was rendered. No action shall be commenced after the expiration of ten years from the date a judgment or decree was rendered or extended. No extension of a judgment or decree shall be granted unless the extension is sought within ten years of the date the original judgment or decree was rendered. A court shall not extend any judgment or decree beyond twenty years from the date of the original judgment or decree. *No extension shall be granted without notice and the filing of a nonhearing motion or a hearing motion to extend the life of the judgment or decree.*

(Emphasis added.)

HRCP Rule 5(a) (2008),[4] and therefore, notice of a proposed extension of a judgment pursuant to HRS § 657-5 must be provided to the judgment debtor prior to the granting of the extension, even if the debtor is in default and is not required under HRCP Rule 5(a) to be served with pleadings; and (2) although the failure to provide notice under HRS § 657-7 (1993) to a party in default is error, such error was harmless under the circumstances of this case. Accordingly, the December 18, 2003 order granting extension of judgment was not void under HRCP Rule 60(b)(4).[5] The error was harmless in this case because Petitioner had never appeared in the action to defend himself, he had an opportunity to be heard at the Rule 60(b) hearing, he offered no defense on the merits to the original judgment or the extension, and thus failed to demonstrate any prejudice. Therefore, the ICA's judgment is affirmed, albeit on different grounds.

## I.

In 1990, Petitioner and his business associates formed Kahala Ventures, a Hawaiʻi partnership. On June 25, 1990, Kahala Ventures borrowed $1,500,000 from Respondent to develop property located in Kahala (property). The lending agreement required the loan to be repaid in full by January 1, 1993. On March 22 of that same year, Respondent filed its complaint for foreclosure and deficiency after Petitioner and his partners failed to make the payments. On April 1, 1993, the complaint and summons were served on Petitioner at his home. Respondent moved for summary judgment on the foreclosure later that month. Notice of the summary judgment motion and hearing were sent to Petitioner at the same address by U.S. mail. Petitioner filed no answer to the complaint and never appeared in court, resulting in a default judgment against him, entered by the clerk of the court on May 6, 1993.[6]

On June 23, 1993, the court granted Respondent's summary judgment motion. The

---

4. HRCP Rule 5(a) governs the "Service and Filing of Pleadings and Other Papers" and provides as follows:

   (a) *Service: When required.* Every order required by its terms to be served, every pleading subsequent to the original complaint unless the court otherwise orders because of numerous defendants, every paper relating to discovery required to be served upon a party unless the court otherwise orders, every written motion other than one which may be heard ex parte, and every written notice, appearance, demand, brief or memorandum of law, offer of judgment, bill of costs, designation of record on appeal, and similar paper shall be served upon each of the parties, *but no service need be made on parties in default for failure to appear, except that pleadings asserting new or additional claims for relief against them* shall be served upon them in the manner provided for service of summons in Rule 4.

   (Italics in original.) (Emphasis added.)

5. HRCP Rule 60(b) provides:

   (b) *Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud, etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:* (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denom-

inated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; *(4) the judgment is void;* (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

   (Italics in original.) (Emphases added.)

6. HRCP Rule 55(a) (2008) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."

Foreclosure Decree determined that $1,565,426.17 was due on the loan as of April 23, 1993, with per diem interest of $471.98 thereafter. By August of 1993, Respondent had sold the mortgaged property for $1,208,218.87.

On December 16, 1993, Respondent served the Affidavit of Michael C. Webb, requesting entry of a deficiency judgment against Petitioner and others in the amount of $467,120, on Petitioner by U.S. mail to the same residence in Kahala. On December 21, 1993, Respondent obtained a deficiency judgment against Petitioner and others, which was served on Petitioner, also via U.S. mail, to his Hawai'i address.

On August 9, 2000, Respondent filed a release of the judgment as to Petitioner's partner, Defendant Donald Eovino, due to his receipt of a discharge in bankruptcy.

On December 10, 2003, Respondent filed a motion to extend the deficiency judgment for an additional ten years, and to set aside an "order of dismissal," which had been entered on June 28, 2002, for inactivity. The motion to extend was not served on Petitioner. Eight days later, the court held a hearing on the motion and entered an order extending the judgment for ten years and setting aside the order of dismissal to the extent that it dismissed claims and parties that were already subject to judgment or otherwise previously dismissed.

Because Respondent did not notify Petitioner of its motion to extend, he did not learn of the extension until 2005. On January 17, 2006, Petitioner filed a HRCP Rule 60(b) motion seeking to void the trial court's 2003 grant of extension, and to expunge the extended deficiency judgment, which was recorded at the Bureau of Conveyances. Petitioner argued that HRS § 657-5 requires notice to the judgment debtor of any motion to extend a judgment, and that Petitioner had an absolute right to notice of the motion to extend.

The court heard argument on Petitioner's motion on February 7, 2006. At the hearing,

Respondent "emphasized that [Petitioner] had never contested the default or appealed the underlying [j]udgment ... [and] ... raised no defenses on the merits to the original [j]udgment or its extension." Respondent also offered the testimony of its Vice President of Commercial Collections, David Bowman, by way of a declaration stating that Respondent had been informed on various occasions that Petitioner had moved back and forth between Colorado and Florida, to show that Respondent was unaware of Petitioner's exact address. Petitioner's arguments focused on the legislative intent in HRS § 657-5 that notice must be provided, on his belief that Respondent actually knew of his exact whereabouts at the time of the extension and that Respondent's assertions to the contrary were hearsay. On March 7, 2006, without announcing any findings of fact or conclusions of law, the court entered an order denying Petitioner's motion to set aside the extension of judgment.

On March 22, 2006, Petitioner filed his notice of appeal. On February 29, 2008, the ICA affirmed the court's March 7, 2006 order denying Petitioner's Rule 60(b) motion. The ICA determined, based on an *in pari materia* reading of HRS § 657-5 and HRCP Rules 5(a) and 55(b)(2) (2008),[7] that Respondent was not required to provide notice to Petitioner prior to entry of the extension of judgment because the notice requirement does not apply to parties who fail to appear and are defaulted. *Shinn*, 118 Hawai'i at 136–37, 185 P.3d at 884–85. Therefore, the ICA concluded that the court had properly denied Petitioner's Rule 60(b) motion to set aside the extension of judgment. Petitioner filed his Application for Writ of Certiorari (Application) on June 18, 2008. This court accepted certiorari and oral argument on the merits was heard on October 16, 2008.

II.

Petitioner lists the following pertinent questions in his Application: [8]

1. *Was Petitioner deprived of (a) his ... HRS [§ ]657–5 statutory procedural*

---

7. *See infra* note 11.

8. Petitioner posits a third question as follows: "Is the Legislature's 2006 amending of HRS

[§ ]636–3 intended to be retroactive?" HRS § 636–3 grants a judgment creditor an automatic lien on any real property of the judgment debtor. Petitioner argues that the lien on real property

*rights,* (b) his [a]rticle [I], [s]ection 5, State [c]onstitutional procedural rights, and (c) his Fifth and Fourteenth Amendment United States [c]onstitutional procedural rights *when the lower court[,] without notice to him or service upon him extended the 1993 money judgment against him,* rendering that extension defective and null and void?

2. *Was the ICA correct in concluding that construing HRS [§ ]657–5 in pari material [sic] with HRCP [Rules] 5 and 55, a motion for extension of judgment need not be served* upon a previously defaulted party, notwithstanding that notice requirement in HRS 657–5, because an extension on judgment request is supposedly not a new or additional claim?

(Emphases added.) [9]

### III.

### A.

Petitioner's first argument [10] is that the trial court should not have granted Respon-

dent's motion to extend the underlying judgment because he did not receive notice of the motion as required by HRS § 657–5. *See* HRS § 657–5 ("No extension shall be granted without notice and the filing of a non-hearing motion or a hearing motion to extend the life of the judgment or decree."). Petitioner argues "that the plain meaning of [the] statute is ... clear and unambiguous," and therefore should control.

Respondent, on the other hand, asserts that the confluence of HRCP Rules 5(a) and 55(b)(2) create an exception to the notice requirement in HRS § 657–5. *See* HRCP Rule 5(a) (stating that "no service need be made on parties in default for failure to appear"); HRCP Rule 55(b)(2) ("If the party against whom judgment by default is sought has appeared in the action, the party ... shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application.").[11] According to Respondent, HRS § 657–5 and HRCP Rule 5 are reconcilable and therefore

---

expired after ten years. Arguably, it is unclear whether Respondent's judgment lien on real property continues with the extension. At the time Respondent filed to extend its judgment, HRS § 636–3 allowed the lien to extend for ten years. HRS § 636–3 (Supp.2005). In 2006, the statute was amended to allow judgment liens to be extended for the life of the judgment. HRS § 636–3 (Supp.2006). However, neither Respondent nor Petitioner have pointed to any real property within Hawai'i that can be attached. The facts of this case do not raise the lien issue. Therefore, the issue is not ripe as it is "not yet appropriate for adjudication." *Office of Hawaiian Affairs v. Housing & Cmty. Dev. Corp. of Hawaii (HCDCH),* 117 Hawai'i 174, 207, 177 P.3d 884, 917 (2008) (citation omitted).

9. Respondent contends that Petitioner's Application does not comply with HRS § 602–59(b) (Supp.2007), which sets out the requirements for the contents of an application for certiorari, because (1) "[Petitioner] fails to state whether he is seeking relief from alleged errors of law or fact"; and (2) "[Petitioner] fails to describe how any such error was grave ... and ... of sufficient magnitude to dictate further appeal." However, Petitioner's arguments are sufficiently clear as to whether he is seeking relief from errors of law or fact, as he specifically points out under which statutory and constitutional provisions he is seeking relief. Furthermore, because Petitioner alleges errors in violation of state statutory law as well as the state and federal constitutions, we think this rises to the level of "[grave] error ...

of sufficient magnitude to dictate further appeal." Therefore, Petitioner's Application meets the requirements of HRS § 602–59(b).

10. Petitioner also argues that (1) "[t]he filing of a HRCP 60(b) [m]otion was the correct method for seeking affirmative relief below." Respondent does not contest this assertion.

11. HRCP Rule Rule 55(b)(2) in its entirety reads as follows:

*By the Court.* In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a guardian, or other such representative who has appeared therein, and upon whom service may be made under Rule 17. *If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application.* If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by

both should be given effect. Respondent argues that when HRS § 657–5 and HRCP Rule 5 are read *in pari materia,* or construed with reference to one another, the notice requirement in the statute does not apply to parties who are in default. The ICA agreed with Respondent, thereby concluding:

> In the instant case, we have no difficulty harmonizing the applicable provisions of HRCP Rule[ ] 5 ... and HRS § 657–5. All observe the principle that service and notice are generally required, but Rule[ ] 5 ... recognize[s] the well-settled exception to that principle applying to parties who fail to appear and are defaulted. Consequently, we hold that the notice requirement contained in HRS § 657–5 does not apply to defaulted parties who have not appeared.

118 Hawai'i at 137, 185 P.3d at 885. Therefore, according to Respondent's argument and the ICA, because default was entered against Petitioner, and he never appeared in the action, the exception to the notice requirement in Rule 5(a) is applicable and Petitioner was not entitled to notice under HRS § 657–5.

In support of its argument that HRCP Rule 5 "does not require that a defaulted party who has failed to appear in the action receive notice," Respondent cites to the ICA's decision in *Pogia.* In *Pogia,* the trial court had entered default judgment after the defendant failed to file an answering brief or appear before the court to contest claims arising out of an automobile accident. 10 Haw.App. at 413, 876 P.2d at 1344. The defendant subsequently asked the court to set aside an award of damages because she had not received notice of the proof hearing. *Id.* at 418, 876 P.2d at 1346.

The ICA held that notice was not required because HRCP Rule 5(a) stated that no pleadings subsequent to the original complaint need be served in cases where default judgment has been entered. *Id.* (citing HRCP Rule 5(a)). Additionally, as described in note 11 *supra,* the ICA construed the notice requirement in HRCP Rule 55(b)(2) for parties who have appeared in the action, as by implication meaning that notice is not required for parties who have not appeared. *Id.* at 419, 876 P.2d at 1346. However, *Pogia* is distinguishable from the present case because HRS § 657–5 was not in issue, and in *Pogia* no other relevant statute was raised that potentially conflicted with the application of HRCP Rule 5(a). Here, however, HRS § 657–5 directly conflicts with HRCP Rule 5(a).

■ Petitioner's argument that the HRS and HRCP provisions should be harmonized where possible finds some support in case law. In *Chock v. Government Employees Insurance Co.,* 103 Hawai'i 263, 81 P.3d 1178 (2003), this court reconciled a potential conflict between HRS § 431:10–242 (1993) and HRCP Rule 54(d) (2000). HRS 431:10–242 [12] gives prevailing *insureds* the right to seek reimbursement for court costs, but is silent as to whether prevailing *insurers* could seek reimbursement, whereas HRCP Rule 54(d) gave *any* prevailing party the right to seek costs. *Id.* Because the statute was silent on the matter of reimbursement for insurers, the insured argued that it should be interpreted as a negative reimbursement right for insurers. *Id.* at 268, 81 P.3d at 1183. This court disagreed, construing HRCP Rule 54(d) as merely overlapping with HRS § 431:10–242. *Id.* at 269, 81 P.3d at 1184. It was concluded that "where the statutes sim-

---

jury to the parties when and as required by any statute.

(Italics in original.) (Emphasis added.) Both Respondent and the ICA cite to *Pogia v. Ramos,* 10 Haw.App. 411, 876 P.2d 1342 (1994), for the proposition that "HRCP Rule 55(b)(2) requires that notice of an application for judgment must be served against a party in default who has appeared in the action; by implication that rule does not require notice to a party in default who has failed to appear in the action." 118 Hawai'i at 136, 185 P.3d at 884 (citing *Pogia,* 10 Haw. App. at 419, 876 P.2d at 1346).

12. HRS § 431:10–242 provides that "[w]here an insurer has contested its liability under a policy and is ordered by the courts to pay benefits under the policy, the policyholder ... shall be awarded reasonable attorney's fees and the costs of suit, in addition to the benefits under the policy," but is silent as to whether the insurer could be awarded fees. No amendments were made to HRS § 431:10–242 after its enactment in 1987. That statute is now in the 2005 replacement volume.

ply overlap in their application, effect will be given to both if possible, as repeal by implication is disfavored." *Id.* (citing *Richardson v. City & County of Honolulu,* 76 Hawai'i 46, 55, 868 P.2d 1193, 1202 (1994)) (emphasis omitted). Unlike the reimbursement statute at issue in *Chock,* HRS § 657–5, which applies to Petitioner's case, is not silent as to notice. The statute unequivocally states that "[n]o extension shall be granted without notice[.]" HRS § 657–5.

Respondent further urges this court to adopt the view of the Oregon Supreme Court in *Shepard & Morse Lumber Co. v. Clawson,* 259 Or. 154, 486 P.2d 542 (1971), that notice is not required for the extension of judgment. However, *Shepard* is inapposite to the present case. The relevant Oregon statute addressing judgment extensions did not set forth any requirement that the judgment debtor be notified of the extension. *Id.* at 544.[13] The Oregon Supreme Court declined to imply such a requirement into the statute. *Id.* By contrast, HRS § 657–5 clearly sets forth a notice requirement for the filing of an extension of judgment.

### B.

*In re Doe Children,* 94 Hawai'i 485, 17 P.3d 217 (2001), addressed this issue in the context of conflicting HRS and Hawai'i Rules of Appellate Procedure (HRAP) provisions for filing appeals. In *Doe Children,* the statute required parties to file a motion for reconsideration within twenty days of final judgment before filing an appeal. *Id.* at 486, 17 P.3d at 218 (citing HRS § 571–54 (1993)). However, HRAP Rule 4 required parties to file an appeal within 30 days of the original judgment. *Id.* (citing HRAP Rule 4(a)(1)). The parents, who had been denied custody of their child, filed a motion for reconsideration and appealed within thirty days of denial of that motion, but more than thirty days after the original judgment. *Id.* at 485–86, 17 P.3d at 217–18. Recognizing that there was a

conflict between the filing requirements in the statute and the rule, this court analyzed the judiciary's rule-making powers in determining whether the statute or the rule controlled. *Id.* at 486–87, 17 P.3d at 218–19. This court looked to the reasoning in *In re Doe,* which stated as follows:

> Article VI, section 7 of the Hawai'i Constitution provides that "the supreme court shall have power to promulgate rules and regulations in all civil and criminal cases for all courts relating to process, practice, procedures and appeals, which shall have the force and effect of law." However, pursuant to HRS § 602–11 (1985), "*such rules shall not abridge, enlarge, or modify the substantive rights of any litigant,* nor the jurisdiction of any of the courts, nor affect any statute of limitation."

*Id.* at 487, 17 P.3d at 219 (quoting *In re Doe,* 77 Hawai'i [109,] 113, 883 P.2d [30,] 34 [ (1994) ] ) (brackets omitted) (emphasis added). In *In re Doe,* because the statute allowed for a longer period within which to file an appeal under the circumstances of the case than the rule, the court determined that the rule improperly "infringe[d] on an aggrieved party's right to appeal by curtailing the time in which to file a timely notice of appeal." *In re Doe,* 77 Hawai'i at 113, 883 P.2d at 34. Based on the same reasoning, this court in *Doe Children* concluded that "the statute, and not the rule, is controlling." 94 Hawai'i at 486, 17 P.3d at 218.

▋ In the present case, this court is similarly faced with a conflict between a statute and a rule. To reiterate, HRS § 657–5 requires that "[n]o extension shall be granted without notice." The notice requirement in HRS § 657–5 is manifest. *See, e.g., Doe Children,* 94 Hawai'i at 486–87, 17 P.3d at 218–19 ("By the plain language of the statute, a party desiring to appeal from an order entered in a proceeding governed by HRS § 571–54 is required to file a motion for

---

13. Oregon Revised Statutes § 18.360 (repealed in 2003) stated as follows:

Whenever, after the entry of judgment, a period of 10 years shall elapse, the judgment and the lien shall expire. However, before the expiration of 10 years the circuit court in which such judgment was docketed, on mo-

tion, may renew such judgment and cause a new entry of the same to be made in the judgment docket, after which entry the lien of the judgment shall continue for another 10 years unless sooner satisfied, and after which entry execution may issue upon such judgment for another 10 years.

reconsideration[,]" and, therefore, "we cannot construe HRAP Rule 4(a)(3) in such a way as to modify the requisite deadline for filing a[ ] HRS § 571–54 motion for reconsideration and the subsequent notice of appeal."). As noted, HRCP Rule 5(a) states that "*no service need be made* on parties in default for failure to appear[.]" (Emphasis added.)

■ However, the notice requirement in HRS § 657–5 does not allow for any exceptions, even for parties in default. Because HRS § 657–5 contains an unambiguous notice requirement, HRCP Rule 5(a) is in direct conflict with the statute. As we reasoned in *Doe Children,* the judiciary may not promulgate rules that abridge the rights of any litigant, in this case, the right to notice as provided HRS § 657–5. Therefore, "the statute, and not the rule, is controlling." *Doe Children,* 94 Hawai'i at 486, 17 P.3d at 218.

■ Hence, the plain language of HRS § 657–5 requires notice to judgment debtors before an "extension shall be granted" and leaves no room for the modification of that right by the civil rules of procedure. *See* HRS § 657–5. Allowing a party, through reliance on HRCP Rule 5(a), to avoid giving notice to a party in default prior to extension of a judgment would eviscerate the legislature's unmistakable mandate in HRS § 657–5 that "[n]o extension shall be granted without notice." As such, we hold that the statute's notice requirement is controlling and that Respondent's failure to provide the notice to Petitioner required by HRS § 657–5 was error.[14]

■ Petitioner also asserts that the jurisprudence interpreting Hawai'i and U.S. Con-

stitutions has "enshrined" a protection of notice that extends to his claim against Respondent's failure to notify him. Petitioner does not make any discernable argument regarding the constitutionality of the HRS and HRCP notice requirements. As such, this argument may be disregarded by the court. *Norton v. Admin. Dir. of the Court,* 80 Hawai'i 197, 200, 908 P.2d 545, 548 (1995) (citing HRAP Rule 28(b)(7) ("Points not argued may be deemed waived.")), *reconsideration denied,* 80 Hawai'i 357, 910 P.2d 128 (1996). Nevertheless, the notice requirement in HRS § 657–5 would satisfy constitutional requirements.

### IV.

#### A.

■ Respondent argues that even if the HRS § 657–5 notice requirement supercedes HRCP Rule 5(a), the order granting the extension is not void because the failure to provide notice was harmless error. In support of its harmless error argument, Respondent cites to *Korean Buddhist Dae Won Sa Temple v. Sullivan,* 87 Hawai'i 217, 953 P.2d 1315 (1998) (hereinafter *Korean Buddhist Temple* ). In *Korean Buddhist Temple,* it was held that "[a] constitutional error is harmless so long as 'the court . . . is able to declare a belief that it was harmless beyond a reasonable doubt.' " *Id.* at 245, 953 P.2d at 1343 (quoting *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)) (brackets omitted). In that case, the Dae Won Sa Temple organization (the Temple) appealed the State's denial of a height variance to its temple structure. *Id.* at 222–23, 953 P.2d at 1320–21. The Temple

---

**14.** Petitioner argues that the declarations of Mr. Bowman, which were offered to show that Respondent was unaware of Petitioner's address during the time when notice should have been given, should not have been admitted at the HRCP Rule 60(b) hearing. Mr. Bowman's affidavit stated that Respondent believed that Petitioner had resided in various places around the country, including Florida and Colorado. Petitioner asserts that Bowman's testimony was "double hearsay[.]" "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the matter asserted." Hawai'i Rules of Evidence (HRE) Rule 801 (Supp.2007).

Respondent correctly points out that Bowman's statement was not offered to prove that Petitioner had in fact lived in those places; but rather, that Respondent believed Petitioner was absent from Hawai'i and was difficult to locate. Hence, in admitting Bowman's testimony, the court did not violate the HRE bar against hearsay. In any event, whether or not Bowman's testimony should have been admitted is irrelevant to our determination, as we have concluded that the failure to provide notice was harmless. *See* discussion *infra.*

claimed that its religion required that the structure be built according to certain standards "in order to maintain the necessary 'balance and harmony.'" *Id.* at 234, 953 P.2d at 1332. After a public hearing regarding the Temple's request for the height variance before a hearing officer, the Director of the Department of Land Utilization (Director) denied the Temple's request for a variance. *Id.* at 224–25, 953 P.2d at 1322–23. The Zoning Board of Appeals (ZBA) heard the Temple's appeal and affirmed the Director's decision. *Id.* at 227–28, 953 P.2d at 1325–26.

> The Temple argued
> that its procedural rights were violated by "the prohibition of examination of the Director with respect to documents and at least one expert, presented to the Director privately by his staff, before he made his decision, in rebuttal to the [Temple's] evidence of the religious significance of the building in question."

*Id.* at 241, 953 P.2d at 1339 (brackets in original). At the administrative hearing, the hearing officer did not allow cross-examination. *Id.* at 224, 953 P.2d at 1322. However, at the ZBA hearing, the parties were allowed to call and cross-examine witnesses. *Id.* at 227, 953 P.2d at 1325. At the ZBA hearing, the Director testified that he had reviewed evidence proffered by his staff that was not introduced at the public hearing, but had not considered it in making his decision. *Id.* at 241, 953 P.2d at 1339. The evidence consisted of a book on Buddhism and advice from "an unidentified 'qualified individual' regarding the Buddhist belief system." *Id.* The ZBA sustained the City's objection to the Temple's continued cross-examination as to the identity of the individual since the evidence was not actually considered by the Director. *Id.* at 228, 953 P.2d at 1326.

Despite the fact that consideration of the outside sources violated HRS § 91–13 (1993), which states that "[n]o official of an agency who renders a decision in a contested case shall consult any person on any issue of fact

except upon notice and opportunity for all parties to participate," this court determined that the Temple was not prejudiced by the Director's actions. *Id.* at 241–42, 953 P.2d at 1339–40. It was concluded that the Director's reliance on the *ex parte* evidence had no bearing on his denial of the height variance because religion was never a factor in whether the variance would be granted. *Id.* Because the *ex parte* information was immaterial and did not affect the outcome, this court concluded that the Director's violation of HRS § 91–13 was harmless error. *Id.*

Additionally, Respondent cites *In re Genesys Data Technologies, Inc.*, 95 Hawai'i 33, 18 P.3d 895 (2001), which involved HRCP Rule 54(c), for the proposition that "the extension order is not void and reversible error simply because it was issued without notice." In that case, the defendant-debtor, Genesys Data Technologies (Data), argued in its defense in an unrelated federal bankruptcy hearing that the underlying default judgment entered against it in the first circuit court was void, because the plaintiff-creditor had failed to provide notice to Data, as required under HRCP Rule 54(c), of the specific amount of damages sought. *Genesys*, 95 Hawai'i at 35, 18 P.3d at 897. In the underlying action for breach of contract and tortious interference with contractual relationship, the plaintiff had sought "[g]eneral, special, treble and punitive damages in an amount to be determined at trial," as well as attorneys' fees and other related costs. *Id.* at 36, 18 P.3d at 898. The Fourth Circuit Court of Appeals, which heard the bankruptcy case on appeal, certified to this court the question of whether the default judgment against Data was void under HRCP Rule 54(c).[15] *Id.* at 37, 18 P.3d at 899.

Upon this court's review of the issue, it was acknowledged that "the award of a default judgment in violation of HRCP Rule 54(c) implicates the defendant's right to due process." *Id.* at 38, 18 P.3d at 900. This

---

**15.** HRCP Rule 54(c) (2008) states as follows:
   *Demand for judgment.* A judgment by default shall not be different in kind from or *exceed in amount that prayed for in the demand for judgment.* Except as to a party against whom a judgment is entered by default, every

final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings.
(Italics in original.)

court recognized that "[t]he purpose of [HRCP Rule 54(c) ] is to provide a defending party with adequate notice upon which to make an informed judgment on whether to default or actively defend the action." *Id.* (citations omitted). Despite the fact that the defendant had not been notified of the specific damage amount sought, it was concluded that a failure to provide notice does not necessarily render the default judgment void:

> [W]hile the failure to give the required notice is generally regarded as a serious procedural irregularity that may afford the basis for reversal on appeal, or for relief under an appropriate clause of Rule 60(b) and in conjunction with other irregularities may render the judgment void, *the error should not usually be treated so serious as to render the judgment void. It should be considered in light of the surrounding circumstances and will, at times, be harmless.*

*Id.* at 40, 18 P.3d at 902 (emphasis added) (quoting *Richardson v. Lane,* 6 Haw.App. 614, 622, 736 P.2d 63, 69 (1987)).

This court considered especially relevant to the question of harmless error the fact that, although Data had not received notice of the specific or additional amounts sought before entry of default, Data did receive such notice prior to entry of the default judgment. *Id.* at 43, 18 P.3d at 905. Based on the fact that "Data had an opportunity to challenge [the specific] amounts at the damage hearing or move to set aside the entry of default[,]" the court concluded that "Data was provided with sufficient notice of the actual amount of damages sought and an opportunity to defend against it prior to the entry of judgment[,]" and therefore the procedural violation was harmless. *Id.* Additionally, this court noted that "even after the circuit court entered judgment in the requested amounts, Data had an opportunity to challenge the default judgment pursuant to HRCP Rule 60(b)" and thus "is now precluded from collaterally attacking the judgment." *Id.*

In opposition, Petitioner does not assert that the court improperly entered the default judgment against him in the 1993 foreclosure case, but argues that, regardless of default, the motion to extend is "null and void" be-cause he did not receive notice as required by HRS § 657–5. Petitioner cites *Stafford v. Dickison,* 46 Haw. 52, 59, 374 P.2d 665, 670 (1962), for the proposition that a default judgement is void where lack of notice denied the defendant the right to put forth a defense. *Stafford* is distinguishable from this case. In *Stafford,* the defendant had actively participated by filing an answer and counter-claim. *Id.* at 53, 374 P.2d at 667. It appeared that his attorney had failed to notify the defendant of his withdrawal from the case just prior to the pre-trial conference. *Id.* at 62, 374 P.2d at 671.

The defendant challenged the entry of default judgment against him, because he had answered, and because he was not provided notice of the default judgment under HRCP Rule 55(b)(2). *Id.* at 58, 374 P.2d at 669. Based on the fact that the defendant had previously appeared in the case to defend himself against the suit, and the court's determination that "defendant's nonappearance [at the pre-trial conference] was due to the court's abuse of discretion in permitting the withdrawal of his counsel without notice[,]" *id.* at 63, 374 P.2d at 671, the court held that "[t]here has been a denial of due process and the judgment is void[,]" *id.* at 63, 374 P.2d at 672. *Stafford* emphasized that:

> [T]he requirement of due process does not mean that every order entered without notice and a preliminary adversary hearing offends due process. The adequacy of notice and hearing respecting proceedings that may affect a party's rights turns, to a considerable extent, on the knowledge which the circumstances show such party may be taken to have of the consequences of his own conduct.

*Id.* (internal quotation marks and citation omitted). The defendant in *Stafford* made an effort to participate in the litigation prior to his lawyer withdrawing from the case. *See id.* at 53, 374 P.2d at 667. By contrast, Petitioner never made an appearance nor did he offer any defense to the claims made by Respondent in the original 1993 action. Furthermore, Petitioner does not make any discernable argument that the extension of judgment deprived him of substantive rights on the merits or that he was without knowl-

edge that his conduct throughout the case was likely to have adverse consequences, namely default and an extension of the judgment. *See id.* at 63, 374 P.2d at 671–72.

**B.**

■ Petitioner correctly asserts that a judgment may be declared void upon a HRCP Rule 60(b)(4) motion regardless of how much time has passed between entry of judgment and filing the motion. *See In re Hana Ranch Co.,* 3 Haw.App. 141, 146, 642 P.2d 938, 941 (1982). Respondent counterargues that because the court heard Petitioner's HRCP Rule 60(b)(4) motion, he has had an opportunity to challenge the extension on its merits and lost. Respondent finds support for this view in *Blaney v. West,* 209 F.3d 1027 (7th Cir.2000).

In *Blaney,* the Court of Appeals for the Seventh Circuit held that insufficient notice may constitute harmless error if there had been an opportunity to challenge the ruling on its merits, either by seeking reconsideration under FRCP Rule 59(e) or seeking relief from final judgment through a FRCP Rule 60(b) motion. *Id.* at 1032. *Blaney* involved an age discrimination suit filed by Blaney that had been dismissed without giving him actual notice of the dismissal as required by FRCP Rule 4(m).[16] *Id.* at 1031. Blaney argued that because the plain meaning of FRCP Rule 4(m) required notice, the dismissal should be overruled. *Id.* The Seventh Circuit Court disagreed, reasoning that Blaney's opportunity to challenge the judgment via a Rule 59 motion to reconsider or a FRCP Rule 60(b)(4) challenge to the underlying judgment meant that the trial court has had an opportunity to decide the case on its merits. *Id.* at 1032.

The opportunity to address the case on its merits meant that Blaney was not prejudiced by the lack of notice, rendering the error harmless. *Id.* That holding is in line with the First and Ninth Circuits, which have held that defective service is harmless error

where the party has had the opportunity to move for reconsideration or to move to void the judgment. *See Varela v. Velez,* 814 F.2d 821 (1st Cir.1987) (trial court's order of dismissal itself gives plaintiff notice and an opportunity to respond where plaintiff had an opportunity to file and did file a motion for reconsideration following dismissal for defective service); *Whale v. United States,* 792 F.2d 951 (9th Cir.1986) (plaintiff not prejudiced by lack of notice when plaintiff had an adequate opportunity to demonstrate good cause in FRCP Rule 60(b) motion following dismissal).

Importantly, this court has also addressed the issue of whether HRCP Rule 60(b) motions provide an adequate opportunity to challenge a judgment on the merits. As noted previously, in *Genesys,* we stated that the defendant "had an opportunity to challenge the default judgment pursuant to HRCP Rule 60(b)." 95 Hawai'i at 43, 18 P.3d at 905. The defendant's failure to do so precluded it from "collaterally attacking the judgment." *Id.* Likewise, Petitioner has had the opportunity to be heard on the merits of his case when he challenged the extension through a HRCP Rule 60(b)(4) motion. In his HRCP Rule 60(b)(4) motion, Petitioner did not challenge the underlying judgment or offer any affirmative defenses to the extension of judgment. Therefore, the circumstances surrounding Petitioner's case do not rise to the level of seriousness necessary to justify voiding the judgment. *See id.*

Petitioner has not shown that he was prejudiced by Respondent's failure to notify him of the extension of judgment. Even if Petitioner had received notice of the motion to extend and had been present at the hearing, the outcome would have been the same. Petitioner never appeared to defend himself in the original action or raised any defenses to the original default judgment. He did not contest the validity of the original judgment at the HRCP Rule 60(b) hearing, nor did he

---

16. FRCP 4(m) states:

If a defendant is not served within 120 days after the complaint is filed, the court-on motion or on its own after notice to the plaintiff-must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(1).

claim that he ever satisfied the judgment by paying Respondent. The court had all the information it needed to determine that the extension should be granted. As such, the extension without notice under HRS § 657–5 must be viewed as harmless error.[17]

## V.

■ The dissent "agree[s] with much of the majority's analysis." Dissenting opinion at 24, 200 P.3d at 393. However, the dissent believes that, despite the fact that the court had subject matter jurisdiction, *id.* at 32, 200 P.3d at 401, it "exceeded its authority" in extending the judgment without notice and therefore the judgment is void, *id.* at 26, 30, 200 P.3d at 395, 399. Nevertheless, the dissent maintains that, upon remand, nothing "*would preclude the [court] from granting* [Respondent's] motion to extend the deficiency judgment," based on the very same motion that suffered from the notice deficiency. *Id.* at 31, 200 P.3d at 400. We find the dissent's position untenable because (1) contrary to its position, a judgment is void only if the court lacked subject matter jurisdiction, jurisdiction over the person, or violated due process and none of those requirements were violated here; (2) the federal and state cases cited by the dissent do not *hold* that a judgment is void when "entered without authority," *see id.* at 26, 200 P.3d at 395; (3) the cases it cites pertaining to any notice requirement are in the context of summary judgment under HRCP *Rule 56* and are subject to *harmless error analysis* rather than a *harmful per se rule* the dissent advocates; (4) under HRCP Rule 61, the "harmless error" rule, a judgment or order is not to be disturbed absent conflict with the substantial rights of the parties, which is not the case here; and (5) the dissent's formulation is intrinsically a harmless error one.

### A.

Initially the dissent points to *Wong Kwai Tong v. Choy Yin,* 31 Haw. 603 (Haw.Terr. 1930), and *Cooper v. Smith,* 70 Haw. 449, 776 P.2d 1178 (1989), to support its argument that a judgment or order may be voided on the jurisdictional ground that the court "exceeded its authority." *See* dissenting opinion at 25–26, 200 P.3d at 394–95. However, neither of those cases is apposite, because neither stands for the proposition contended nor pertains to a notice requirement that is the crux of the instant case.

In *Wong Kwai Tong,* the statute at issue did not grant the divorce court the power to divide the husband's real estate as the circuit court had done. 31 Haw. at 606, 609. Therefore, "the judicial order providing that the wife should 'have the right to occupy the home she is now living in' was beyond the jurisdiction of the court and void." *Id.* at 609. There is no indication that the decision in *Wong Kwai Tong* established some jurisdictional category outside of subject matter or personal jurisdiction. As this court observed, "even when a court has jurisdiction over the parties and the subject matter, yet it may lack jurisdiction to make *the particular decree* which it attempts to make[.]" *Id.* at 606 (emphasis added). Only the obvious proposition that there are *limits* on a court's subject matter jurisdiction was reiterated, because it does not automatically follow that "where a court has once acquired jurisdiction, it has a right to decide every question which arises in the cause[.]" *Id.* at 607.

Cited as hypothetical examples of instances when a court would be considered to have exceeded its jurisdiction were (1) "[i]f, for instance, the action be upon a money demand, the court ... has no power to pass

---

17. Respondent cites to HRS § 657–18 (1993), which tolls "causes of actions" if the defendant is out of state and unavailable, arguing that the extension of judgment should be tolled because Petitioner was outside the state. Petitioner maintains that "[t]he ICA erred by ignoring the clear expression of [l]egislative intent found in HRS 634–36 [(1993)] authorizing substitute service by personal service out-of-state and by certi- fied, registered, or express mail." This court has held that where service of process by public notice would have sufficed, causes of action are not tolled. *See Eto v. Muranaka,* 99 Hawai'i 488, 57 P.3d 413 (2002). Furthermore, because we have determined that the order extending the judgment is not void, Respondent's argument is moot.

judgment of imprisonment[;]" (2) "[i]f the action be for a libel or personal tort, the court cannot order in the case a specific performance of a contract[;]" (3) "[i]f the action be for the possession of real property, the court is powerless to admit in the case the probate of a will." *Id.* at 608. Those examples indicate that *Wong Kwai Tong* was not referring to the kind of procedural defect present in the instant case, but to situations where the court had been granted a particular type of limited subject matter jurisdiction and exceeded it. Thus, although the circuit court had jurisdiction over the *general subject matter* of the divorce decree, it did not have jurisdiction, or *exceeded* the bounds of the subject matter appropriately before it,[18] with regard to the particular provision regarding the division of property, and, therefore, that provision was void. *Id.* at 606, 609. *This does not provide any support for the proposition that a party's violation of a notice requirement somehow causes a court to "exceed its jurisdiction."*

By contrast, in the instant case, the court did not "make[ ] a decree which is not within the powers granted to it by the law of its organization[.]" *See id.* at 606. To the contrary, it is manifest from the language of HRS § 657-5 that granting a motion for extension is within the court's power. The error in the instant case is not that the court was without power to extend the judgment, and therefore without jurisdiction, but that the creditor failed to notify the judgment debtor of the extension. As distinguished from *Wong Kwai Tong*, where the court acted beyond the limited grant of subject matter jurisdiction, failure of notice here is a procedural, as opposed to jurisdictional, matter, and is therefore controlled by the precepts of

due process and harmless error, as our cases have held. *See infra.*

### B.

*Cooper* also does not support the dissent's position. The dissent states that *Cooper* "*suggest[ed]*" that a court's judgment may also be void when it is entered without authority." Dissenting opinion at 26, 200 P.3d at 395 (emphasis added). As the dissent acknowledges, the aforementioned proposition was *not a holding* in *Cooper. See id.* The dissent concedes, as it must, that *Cooper* expressly declared that "only" three grounds support a void judgment. *Id.* (citation omitted). Reversing the circuit court in *Cooper*,[19] this court clarified that "*[a] judgment is not void because it [may be] erroneous. It is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.*" 70 Haw. at 454, 776 P.2d at 1181 (quoting 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2862, at 198–200 (1973)) (internal quotation marks omitted) (emphases added). This court determined in *Cooper* that "[n]othing in the record indicates the family court's decree was afflicted with any of these infirmities[,]" and therefore, the judgment was not void. *Id.*

The dissent apparently seizes on dicta in footnote number 1 in *Cooper* to support its theory that a judgment may be void where the court is "without authority" to enter the judgment. Dissenting opinion at 26, 200 P.3d at 395, citing *Cooper*, 70 Haw. at 454 n. 1, 776 P.2d at 1181 n. 1). In that footnote, however, this court merely noted that HRS § 580-56(d) "deprives the family court of power to divide the personal estate of the parties after the lapse of the given period

---

18. This court in *Wong Kwai Tong* referred to "excess" of jurisdiction and "lack" of jurisdiction interchangeably. *See id.* at 606, 607. The defect can be referred to as an "excess" of jurisdiction where the court has subject matter jurisdiction except over an issue which was decided outside of its power. By the same token, as to the particular provision "providing that the wife should 'have the right to occupy the home she is now living in[,]' " *id.* at 609, jurisdiction was completely absent, and accordingly, had the court in *Wong Kwai Tong* only attempted to effect

a division of property between the parties and nothing more, it would have been completely without jurisdiction. Hence, the difference in terminology was not material.

19. In *Cooper*, the circuit court had invalidated a provision in a divorce decree that had been agreed upon by the parties and approved by the family court because it was an "unenforceable penalty and [ ] therefore void." 70 Haw. at 450, 776 P.2d at 1179.

over the objections of either party[,]"[20] but that the statute would not have deprived the family court of authority to enforce the division made by agreement of the parties in that case. *Cooper*, 70 Haw. at 454 n. 1, 776 P.2d at 1182 n. 1.

Because that discussion was not necessary to this court's decision, and because this court concluded that the statute was inapplicable to the facts of that case, *Cooper* was not concerned with whether the statutory requirement was procedural or jurisdictional, whether a related error would be subject to a harmless error analysis, or whether the statutory limitation would have been an appropriate basis for collateral attack.[21]

The limited grounds for voiding a judgment adopted in *Cooper* remain unchanged despite the dissent's effort to extract a fourth ground evincing a void judgment from *Cooper*. According to Wright & Miller, "[a] judgment ... is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2862, at 326–29 (1995) (footnotes omitted). Although the treatise notes that "[s]tate law may have some relevance in determining whether a judgment is void, particularly if it goes beyond federal law and would strike down a judgment that federal law would permit[,]" it does not refer to additional circumstances under which a judgment may be considered void other than those listed above, the same grounds adopted in *Cooper*. *See id.* at 325 (footnote omitted).

As the dissent concedes, none of the grounds for a void judgment as set forth in *Cooper*, *i.e.*, lack of subject matter jurisdiction, jurisdiction over the parties, or due process, are present in the instant case. *See* dissenting opinion at 25, 26–27, 32, 200 P.3d at 394, 395–96, 401. *Cooper*, then, offers no support for the dissent's position. On the other hand, it confirms that the three grounds for a void judgment are not present in the instant case inasmuch as the circuit court had subject matter and personal jurisdiction and Petitioner's due process rights have not been violated.

### C.

Furthermore, our cases subsequent to *Cooper* have continued to recognize that collateral attack under Rule 60(b)(4) is limited to three categories of void judgments. For example, in *Genesys*, this court held that " '[i]n the sound interest of finality, the concept of void judgment must be narrowly restricted.' " 95 Hawai'i at 38, 18 P.3d at 900 (quoting *Dillingham Inv. Corp. v. Kunio Yokoyama Trust*, 8 Haw.App. 226, 233, 797 P.2d 1316, 1320 (1990)). *Genesys* reiterated as follows:

*[a] judgment is void "only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law."* [Cooper ], 70 Haw. [at] 454, 776 P.2d [at] 1181, *reconsideration denied*, 70 Haw. 449, 776 P.2d 1178 (1989). *There is no indication that the circuit court lacked jurisdiction over the subject matter or the parties in this case. Thus, our analysis focuses upon whether the circuit court's entry of judgment was consistent with due process.*

*Id.* (emphases added); *see also Dillingham*, 8 Haw.App. at 233–34, 797 P.2d at 1320 (1990) ("[i]n the sound interest of finality, the concept of void judgment must be narrowly restricted ... if a court has the general power to adjudicate the issues in the class of suits to which the case belongs then its interim orders and final judgments, whether right or wrong, are not subject to collateral attack, so far as jurisdiction over the subject matter is concerned" (internal quotation marks and citations omitted)); *Int'l Sav. & Loan Ass'n,*

---

20. If this dicta signifies anything, it is the same proposition outlined *supra* with regard to *Wong Kwai Tong*, that, although the court had *general* subject matter jurisdiction over the divorce, the *particular* matter of the division of the personal estate of the parties was *beyond* the subject matter jurisdiction granted by the statute.

21. Indeed, *Cooper* indicates the opposite by confining the bases for voiding a judgment under Rule 60(b) to challenges based on personal jurisdiction, subject matter jurisdiction, or due process.

*Ltd. v. Woods*, 69 Haw. 11, 18 731 P.2d 151, 156 (1987) (stating that finality refers to "very real interests," "not merely those of the immediate parties but also those that pertain to the smooth functioning of our judicial system" (internal quotation marks, brackets, and citation omitted)); *Impact Fin. Servs. v. Kamaaina Termite & Pest Control, Inc.*, 118 Hawai'i 423, 192 P.3d 612, 2008 WL 4418180, No. 27887, at 9 (App. Sept. 29, 2008) (mem.) (" 'a judgment is void only if the court that rendered it lacked jurisdiction of either the subject matter or the parties or otherwise acted in a manner inconsistent with due process of law' ... [t]herefore, 'in the sound interest of finality, the concept of void judgment must be narrowly restricted' " (quoting *Citicorp Mortgage, Inc. v. Bartolome*, 94 Hawai'i 422, 428, 16 P.3d 827, 833 (App.2000))).

The dissent maintains that *Genesys* did not "consider[ ] whether a court's judgment was void because the court exceeded its authority in entering the judgment." Dissenting opinion at 25, 200 P.3d at 394. To the contrary as noted above, this court appropriately started with the well-settled proposition that there are limited bases for collateral attack of a judgment as void, and confined itself to those bases. *See Genesys*, 95 Hawai'i at 38, 18 P.3d at 900. That this court did not consider whether violation of the notice requirement caused the court "to exceed its authority" was not an oversight but an appli-

cation of Rule 60(b)(4) consistent with other cases in our jurisdiction.

### D.

Despite controlling precedent in our jurisdiction, the dissent cites to federal law regarding FRCP Rule 60(b)(4).[22] Dissenting opinion at 26–27, 200 P.3d at 395–96. However, the dissent's reliance on those cases, again, is based on its view that they "strongly suggest," rather than hold, that a judgment is void where a court "exceed[s] its authority." *Id.* at 26, 200 P.3d at 395 (citing *United States v. Indoor Cultivation Equip. From High Tech Indoor Garden Supply*, 55 F.3d 1311, 1316 (7th Cir.1995) and *Carter v. Fenner*, 136 F.3d 1000, 1005 (5th Cir.1998)).

In *Indoor Cultivation*, the Seventh Circuit's analysis does not sustain the dissent's argument that a notice requirement is jurisdictional, inasmuch as the case involved a statute of limitations, not a notice requirement, and because that court declined to decide whether the 60–day requirement was procedural or jurisdictional, and thus did not address the question of harmless error. *See* 55 F.3d at 1313–14, 1317. The Seventh Circuit concluded that the court lacked authority to enter a judgment against the defendant's property where the government had failed to commence a forfeiture action within the period prescribed by statute.[23] 55 F.3d at 1317.

---

**22.** FRCP and HRCP Rules 60(b)(4) are almost identical. FRCP Rule 60(b)(4) provides:

> (b) **Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: ... (4) the judgment is void[.]

HRCP Rule 60(b)(4) similarly states:

> (b) **Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud, etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (4) the judgment is void[.]

This court has said that "FRCP Rule 60(b) and HRCP 60(b) are identical. When a Hawai'i rule of procedure is modeled after a federal rule, 'the interpretation of [the rule] by the federal courts [is] deemed to be highly persuasive in the reasoning of this court.' " *Moyle v. Y & Y Hyup Shin, Corp.*, 118 Hawai'i 385, 403, 191 P.3d 1062,

1080 (2008) (quoting *Harada v. Burns*, 50 Haw. 528, 532, 445 P.2d 376, 380 (1968)) (brackets in original).

**23.** The case revolved around provisions of the Anti–Drug Abuse Act of 1988, codified at 21 U.S.C. § 888, which "[gave] owners of [ ] conveyances [seized by the government for drug-related offenses] several procedural rights not enjoyed by claimants in other federal forfeiture actions." *Id.* at 1313. "Most relevant" was 21 U.S.C. § 888(c), which "require[d] the government to file its complaint for forfeiture against any conveyance it [had] seize[d] for a drug-related offense not later than 60 days after a claimant contest[ed] the seizure by filing a claim and cost bond." *Id.* at 1313–14. Appellant argued and the Seventh Circuit agreed that "because the government did not file its civil complaint seeking the forfeiture of his property until ... over eighteen months after he filed the appropriate claims and cost bonds, the only jurisdiction the district court retained over these three conveyances, according to § 888(c), was to order their

*Carter* involved a wrongful death suit in which the underlying proceeds were to go to the decedent's minor son. 136 F.3d at 1003. The child's mother had settled the claim with the City of New Orleans without judicial review, which was required under Louisiana law. *Id.* at 1007–08. Although concluding that because the child's rights had not been protected by judicial review, the consent judgment had "no legal effect," [24] *id.* at 1008, the *Carter* court did not hold that the defect was jurisdictional and qualified its decision by emphasizing that Rule 60(b) was an "extraordinary remedy" employed only to do "substantial justice," which in that case was necessary because of the state's *special concern for the protection of the rights of minor children,*[25] *id.* at 1007–08.

Furthermore, the dissent does not address federal cases that have held, contrary to the dissent's position, that violation of a *notice requirement* is *not* appropriate grounds for voiding a judgment. For instance, in *Farm Credit Bank of Baltimore v. Ferrera–Goitia,* the appellants used FRCP Rule 60(b)(4) "[to contest] the validity of the district court's confirmation order based upon the Bank's alleged failures (1) properly to give notice of the public sale, and (2) properly to name the junior lienholder as a party." 316 F.3d 62, 68 (1st Cir.2003). Appellants argued that "the district court's actions patently exceeded its power." *Id.*

In dismissing that argument, that court noted that "[t]o support this extravagant suggestion, the appellants charge that the foreclosure proceedings were fraught with material defects. The defects that they cite-if defects at all-*are technical in nature and do not evince any usurpation of power. In short, the appellant received all the process that was due.*" *Id.* (emphasis added) (footnote omitted). Apparently finding no due process violation, the First Circuit rejected appellant's argument that the judgment was void because the court had "exceeded its power" based on "technical" defects, such as "failure to name … a party … and … *failure to give notice … in strict accordance with Puerto Rico law.*" See *id.* (emphases added); *see also U.S. v. Martin,* 395 F.Supp. 954, 960–961 (D.C.N.Y.1975) (holding that "even assuming arguendo both that there was an oral agreement not to take a default

return to [the appellant] and prevent any forfeiture of them from taking place." *Id.* at 1314.

That court based its decision on the "evident" legislative purpose to protect innocent owners. *Id.* at 1315–16. As to the statutory intent, the court stated that "[b]ecause conveyances seized under the forfeiture law can remain tied up during the pendency of … proceedings for months on end, innocent owners may be deprived of their principal mode of transportation for extended periods of time … [and] the conveyances returned to innocent owners may be worth substantially less…." *Id.* at 1316.

24. The Fifth Circuit discussed circumstances under which a judgment may be void under FRCP Rule 60(b)(4) in *Carter.* In its FRCP Rule 60(b) motion, the City had not alleged that the court lacked jurisdiction or that due process was violated, "but instead insisted that Carter's own procedural failures rendered the judgment void." *Id.* at 1006. In its discussion, the court recognized that "[s]ome circuits have noted that a judgment is void if the rendering court was powerless to enter it … [w]hile such holdings most obviously allude to a jurisdictional defect, they allow enough room to capture within their reach situations where the parties' failure to follow relevant law or procedure in securing the judgment will undermine its ultimate validity." *Id.* (citation omitted).

25. To that end, the Fifth Circuit concluded that "[u]ltimately, the statute and the jurisprudence elevate the protection of the delicate interests of the minor *over all other considerations.*" *Id.* at 1008 (emphasis added). No similar considerations are present in the instant case. Furthermore, the case rested on Fifth Circuit precedent on the issue. That court had previously held that

[f]or adults functioning on behalf of minors there remains a continuing duty to act in the best interests of the child—"as a prudent administrator," La.Code. Civ. Proc. art. 4262– and to seek and obtain *prior* court approval under 4271 before compromising those interests. *Compromises entered into absent these protections are of no legal effect* …. "[T]he courts of Louisiana have been most protective of the minor's interest in the area of settlement of claims and have not hesitated to nullify any settlement or compromise that was not judicially approved."

*Id.* (quoting *Johnson v. Ford Motor Company,* 707 F.2d 189, 194 (5th Cir.1983) (emphases in original)). No such precedent exists in this court regarding the notice requirement in HRS § 657–5. Instead, this court's precedent indicates that failure to comply with a notice requirement is subject to a harmless error analysis. *See, e.g., Genesys,* 95 Hawai'i 33, 18 P.3d 895; *Jensen v. Pratt,* 53 Haw. 201, 491 P.2d 547 (1971).

judgment without prior notice and that the agreement constituted an appearance by Martin for the purposes of [FRCP] Rules 55(b) and 77(d), the resulting *failure to give notice* of the application for and the entry of the default judgment *is a procedural rather than a jurisdictional defect which does not necessarily render the judgment void*") (emphases added). The dissent concedes that *Cooper* and the foregoing federal cases do not *hold* that a judgment is void when a court "exceeds its authority" and do not involve notice requirements. *See* dissenting opinion at 26, 27, 200 P.3d at 395, 396. In sum, they are not determinative of this case.

## VI.

### A.

Because none of the foregoing cases involve a notice requirement, the dissent apparently turns to decisions interpreting the notice requirement in HRCP Rule 56(c) as illustrative of its view that "a violation [of notice] may, in some circumstances, give rise to a jurisdictional defect." *Id.* at 27, 200 P.3d at 396. *But the cases cited by the dissent are in fact consistent with the proposition that failure to provide notice is subject to a harmless error analysis.* Indeed, those cases reflect that a party's failure to comply with a notice requirement *is* subject to harmless error analysis.

The dissent relies on *Clarke v. Civil Service Commission*, 50 Haw. 169, 434 P.2d 312 (1967) and *Jensen.* In *Clarke*, an institution superintendent who had been dismissed from his job appealed the circuit court's *sua sponte* grant of summary judgment to the Civil Service Commission, alleging several points of error. 50 Haw. at 169–70, 434 P.2d at 312–13. At a pre-trial conference, "[a]fter a review of memoranda filed by the parties, the court decided to treat the appellees' supplemental memorandum as a motion for summary judgment and thereupon dismissed the appeal." *Id.* at 170, 434 P.2d at 313. As this court noted, that court erred when it "proceeded to grant summary judgment to the appellees without notice to the appellant *and* without a hearing on the matter," in contra-

vention of the requirements of HRCP Rule 56(c). *Id.* (emphasis added). Subsection (c) of Rule 56, "require[d] that the motion for summary judgment be served 'at least 10 days before the time fixed for the hearing.'" *Id.* It was reasoned that "[t]his provision can only be interpreted as requiring that the time for a hearing be fixed; that the adverse party be given notice of such setting; *and that a hearing in fact be held on the matter.*" *Id.* (emphasis added).

From the foregoing the dissent maintains that "[s]uch an error is harmful *per se.*" Dissenting opinion at 27, 200 P.3d at 396. But the trial court in *Clarke* had failed to satisfy *any* of the notice and hearing requirements, and therefore *Clarke* cannot stand for the solitary proposition that failure of the notice requirement would have risen to reversible error per se. *Cf. Genesys*, 95 Hawai‘i at 40, 18 P.3d at 902 (noting that "while the *failure to give the required notice* is generally regarded as a serious procedural irregularity that may afford the basis ... for relief under an appropriate clause of Rule 60(b) and *in conjunction with other irregularities may render the judgment void,* the error should not usually be treated as so serious as to render the judgment void") (brackets and citation omitted) (emphasis added).

The dissent disputes that as between notice and hearing requirements the absence of a hearing was the "primar[y] concern[ ]." Dissenting opinion at 28, 200 P.3d at 397. Nevertheless, that is what this court said:

> The appellant specifies several errors allegedly committed by the trial court in dismissing the appeal below. However, we think that *only one of such allegations is vital to the disposition of this appeal.* Appellant contends that *the court committed reversible error when it granted summary judgment on its own motion without giving opposing counsel an opportunity to be heard* on the matter.

*Clarke*, 50 Haw. at 170, 434 P.2d at 313 (emphases added). The dissent also maintains that *Clarke* referred to "[a] well-settled [proposition] *in federal courts* that ... in the absence of such notice and hearing, the court is without jurisdiction to grant summary

judgment." Dissenting opinion at 27, 200 P.3d at 396. However, *Clarke* did not say that violation of a notice requirement was *harmful per se*, but held that "the trial court *erred* in dismissing the appeal without notice and without a hearing." 50 Haw. at 170, 434 P.2d at 313. Likewise, as noted *supra,* this court held in *Cooper* that "[a] judgment is not void because it [may be] erroneous." 70 Haw. at 454, 776 P.2d at 1181 (brackets in original) (citation omitted).

Additionally, *Clarke* is distinguishable because there the appellant had his case dismissed without ever having the opportunity to raise defenses to summary judgment on the merits. *See* 50 Haw. at 169–70, 434 P.2d at 312–13. By contrast, here Petitioner received notice and an opportunity to raise defenses on the merits both in the original proceeding and in the Rule 60(b) hearing. Therefore, *Clarke* is not controlling.[26]

### B.

Any question arising from *Clarke* about whether lack of notice was harmful per se was answered in the negative in *Jensen.* In *Jensen,* this court clarified *Clarke* and concluded that although denial of an opportunity to be heard under HRCP Rule 56 is reversible error because it affects "substantial rights," failure of notice under HRCP Rule 56(c) is subject to a harmless error analysis. 53 Haw. at 202–03, 491 P.2d at 548. After the defendant in *Jensen* moved for summary judgment, "the trial judge [had] asked for argument on the motion by written memoranda, setting neither a time limit for the submission of memoranda nor a date for oral hearing." *Id.* at 201–02, 491 P.2d at 548. The trial judge had then granted summary judgment in favor of the defendants. *Id.* at 202, 491 P.2d at 548. *Jensen* manifestly held that the HRCP Rule 56(c) notice requirement is subject to a harmless error analysis.

Plaintiffs assert that the failure of the trial court to comply with the notice and hearing requirements of [HRCP] Rule 56(c) is reversible error. This court has held that, *absent a showing of harm, the failure of the trial court to comply with the require-*

*ment of ten days' notice of hearing set forth in H.R.C.P. Rule 56(c) is not reversible error. The requirement of showing that the error is prejudicial stems from [HRCP] Rule 61:* "The court at every stage of the proceeding *must disregard any error which does not affect the substantial rights of the parties.*" We think the proper standard of appellate review under [HRCP] Rule 56(c) is *to treat periods of notice of less than ten days as nonprejudicial, in the absence of a showing of actual harm . . .*

On the other hand, *we think the dispensing with the opportunity to be heard orally on a motion for summary judgment,* contrary to the requirement of [HRCP] Rule 56(c), *so strongly affects the substantial rights of the parties as to constitute harmful error per se.*

*Id.* (citations omitted) (emphases added).

This court directed that the "proper standard of appellate review . . . is to treat periods of notice less than ten days as *nonprejudicial,* in the absence of . . . *actual harm* " as contrasted to "dispensing with the opportunity to be heard" which was "harmful error per se." *See id.* (emphases added). Accordingly, this court emphasized that failure of notice was "non-prejudicial" in the absence of actual harm, and not "harmful per se" as the dissent would contend. *See id.* The dissent's rationale then directly conflicts with *Jensen's* view that reserved the harmful per se designation for the lack of a hearing, and not for a defect in notice.

### C.

According to the dissent, *Clarke* and its progeny stand for the proposition that with respect to "HRCP Rule 56(c)'s notice requirement, [where] there has been at least *some* notice of the hearing, the aggrieved party must show that he has been prejudiced . . . [b]ut, if . . . there has been *no* notice of the hearing, then . . . the violation is jurisdictional in nature and thus harmful *per se.*" Dissenting opinion at 29, 200 P.3d at 398 (emphases in original).

**26.** Therefore, we disagree with the dissent that *Clarke* dictates that the error is harmful per se or

jurisdictional in this case. *See* Dissenting opinion at 30 n. 6, 200 P.3d at 399 n. 6.

However, *Shelton Engineering Contractors, Ltd. v. Hawaiian Pacific Industries, Inc.,* indicated that, despite the fact that *Clarke* used the term "jurisdiction," the notice provision in Rule 56(c) was not in fact jurisdictional, even when it came to the necessity for compliance with the *"literal requirement* of the rule." *See* 51 Haw. 242, 246, 456 P.2d 222, 225 (1969) (emphasis added). *Shelton* was the first case to construe *Clarke.* As the dissent acknowledges, in *Shelton,* "because the non-moving party *had not shown that he had been harmed* by not having a full ten days' notice, we would not disturb the entry of summary judgment on the ground that HRCP Rule 56(c) had been violated." Dissenting opinion at 28, 200 P.3d at 397 (citing *Shelton,* 51 Haw. at 246, 456 P.2d at 225)(emphasis added).

As noted before, *Jensen* clarified the notice rule, holding that *"absent a showing of harm,* the failure of the trial court to comply with the requirement of ten days' notice of hearing set forth in [HRCP] Rule 56(c) is not reversible error[,]" 53 Haw. at 202, 491 P.2d at 548 (emphasis added), without any qualification as to substantial compliance, some compliance, or *any* compliance. This court did not indicate that in cases where no notice was provided, the court is deprived of jurisdiction or that the defect is harmful per se as the dissent now proposes. *See id.*

### D.

The dissent's position is put to rest by *Querubin v. Thronas,* 107 Hawai'i 48, 109 P.3d 689 (2005). Decided subsequent to *Clarke, Querubin* dealt directly with a fact situation in which the Appellants had received *no notice* of summary judgment under Rule 56(c). *Id.* at 59, 109 P.3d at 700. That case considered "noteworthy that the [ICA] has held that 'violation of the notice requirement does not automatically result in a reversal,' insofar as *'Clarke's progeny holds that absent a showing of harm, the failure of the trial court to comply with the requirement of ten days' notice of hearing set forth in HRCP Rule 56(c) is not reversible error.'* " *Id.* at 58, 109 P.3d at 699 (quoting *Kau v. City and County of Honolulu,* 6 Haw.App. 370, 372–73, 722 P.2d 1043, 1045)

(1986) (emphases and some internal quotation marks omitted) (emphasis added). This court recognized in *Querubin* that "in contrast to *Kau* and *Shelton,* the Appellants had *no notice* that Thronas was seeking summary judgment against them precisely because he had *not,* in fact, moved for summary judgment against them" and because "the circuit court gave the [a]ppellants no notice that it was treating Thronas's joinder as an MSJ against *them." Id.* at 59, 109 P.3d at 700 (emphases in original).

Despite the fact that no notice had been given, as is the case here, this court did *not* say that the failure of notice was per se harmful or that it deprived the court of jurisdiction. *See id.* To the contrary, this court followed the established rule in this jurisdiction for analyzing failures of notice and determined that "the [a]ppellants were obviously and *actually prejudiced* by the lack of notice" and "that the circuit court erred in *sua sponte* ... granting Thronas's MSJ via joinder, ... without providing the [a]ppellants notice and an oral hearing." *Id.* at 59–60, 109 P.3d at 700–01 (emphases in original).

■ Therefore, according to *Querubin,* violations of the notice requirement in Rule 56(c), *whether complete or partial,* are subject to a harmless error analysis and are not jurisdictional defects as the dissent would have it. If harmless error were not the doctrine to apply as to the failure to give any notice, *Querubin* would not have engaged in an "actual prejudice" analysis. If anything, *Querubin* solidifies this court's position that *no notice is not harmful error per se.* With all due respect, *Querubin* cannot be squared in principle (as neither can our other cases referred to above) with the dissent's contradictory position that the failure to give notice is *harmful per se* rather than subject to harmless error analysis.

### VII.

■ Additionally, it does not follow that failure of notice under HRS § 657–5 is harmful per se or jurisdictional. The dissent draws its conclusion that "the circuit court exceeded its jurisdiction under HRS § 657–5," dissenting opinion at 30, 200 P.3d at 399,

from the fact that "use of the word 'shall' [in HRS § 657–5] strongly implies that notice is mandatory" and, in this case, no notice was given, *id.* at 30, 200 P.3d at 399. But the language of HRCP Rule 56(c) similarly *mandates* that "[t]he motion *shall* be filed and served *not less than 18 days* before the date set for the hearing." (Emphases added.)[27] It is indisputable that the cases construing the notice requirement in HRCP Rule 56(c) hold that failures to comply with the requirement that notice be provided within specified time limits *do not constitute reversible error per se.* Therefore, the cases interpreting the notice requirement in Rule 56(c) plainly do not stand for the proposition that jurisdiction is nullified when the clear and seemingly mandatory requirement of a rule or statute is violated.[28]

## VIII.

The dissent also conflicts with HRCP Rule 61, the "harmless error" rule. As this court pointed out in *Jensen,* "[t]he requirement of showing that the error is prejudicial stems from [HRCP] Rule 61." That rule provides that

[n]o error in either the admission or the exclusion of evidence and *no error or defect* in any ruling or order or in anything done or omitted by the court or by any of the parties *is ground* for granting a new trial or for setting aside a verdict or for

vacating, modifying, *or otherwise disturbing a judgment or order, unless* refusal to take such action appears to the court *inconsistent with substantial justice.* The court at every stage of the proceeding *must disregard any error or defect* in the proceeding *which does not affect the substantial rights of the parties.*

(Emphases added.)

Where it is necessary to set aside a judgment in order to do "substantial justice" or to safeguard "substantial rights," our courts may act pursuant to HRCP Rule 61. Because, as here, the defect is not inconsistent with substantial justice, we are in no position to set aside the judgment. *See, e.g., In re Doe,* 100 Hawai'i 335, 343–344, 60 P.3d 285, 293–294 (2002) (although under HRS §§ 587–1 and 587–26, the Department of Human Services has an obligation to offer a service plan "to provide 'every reasonable opportunity' for a parent to be reunited with his or her child" and "[m]erely proffering a list of phone numbers may fall short of the policy[,]" no "substantial prejudice resulted to Mother" under Hawai'i Family Court Rules Rule 61 where "[i]t [was] apparent that Mother was unwilling to participate in DHS services") (brackets omitted); *Dang v. F and S Land Development Corp.,* 62 Haw. 583, 592, 618 P.2d 276, 282–83 (1980) ("[w]ith respect to the contention that the trial court erred in admitting testimony . . . we find this did 'not affect the substantial rights' of plain-

---

27. At the time of *Clarke, Jensen, Shelton,* and *Kau* the requirement was 10 days instead of 18. The rule was amended subsequently. *See* Order Amending the Hawai'i Rules of Civil Procedure (Sept. 11, 1996); Order Amending Rules 6(d) and 56(c) of the Hawai'i Rules of Civil Procedure (May 15, 1997).

28. Similarly, although the dissent attempts to distinguish *Stafford* and *Korean Buddhist Temple* as being due process cases, *see* dissenting opinion at 30, 200 P.3d at 399, in both cases the statute or rule at issue contained similarly mandatory language and there was no question that the procedures violated were *required* under the plain language of the rule or statute. Yet this court did not conclude that jurisdiction was lacking. *Stafford* dealt with violation of HRCP Rule 55(b)(2), *see* 46 Haw. at 58, 374 P.2d at 669, which provides that "[i]f the party against whom judgment by default is sought has appeared in the action, the party . . . *shall be served with written notice* of the application for judgment at

least 3 days prior to the hearing on such application." (Emphasis added.) Despite the plain requirement in the rule, this court "concluded that failure to give the notice of an application for default judgment required by Rule 55(b)(2) does not in itself render the judgment void but instead is a procedural irregularity which may be rectified by appropriate means." *Id.* at 60, 374 P.2d at 670 (citations omitted).

Likewise, in *Korean Buddhist Temple,* the language of the statute was mandatory: *"No official* of an agency who renders a decision in a contested case *shall consult* any person on any issue of fact except upon notice and opportunity for all parties to participate." 87 Hawai'i at 241, 953 P.2d at 1339 (quoting HRS § 91–13 (1993)) (emphases added) (brackets omitted). Despite the seemingly mandatory language, this court could "discern no *prejudice* to the Temple's substantial rights . . . and [therefore held] that *the error was harmless." Id.* at 242, 953 P.2d at 1340 (emphases added).

tiffs" under HRCP Rule 61); *Nishitani v. Baker*, 82 Hawai'i 281, 292, 921 P.2d 1182, 1193 (App.1996) ("[s]ince Defendants would have been 'affected' by the notice of substitution, we agree that [the p]laintiff's failure to serve them violated HRCP Rule 5(a). However, based on our review of the record in this case, we conclude that such failure did not affect [the d]efendants' substantial rights and was, thus, [under HRCP Rule 61] harmless error"); *In re S Children*, No. 28565, at 4, 118 Hawai'i 424, 192 P.3d 613, 2008 WL 4293664 (App. Sept. 22, 2008) (SDO) (citing HRCP Rule 61 and holding that "[g]iven that Father does not explain how he was prejudiced by the court's denial of his oral motions to continue, we fail to see how the court abused its discretion by denying said motions").

Neither Petitioner nor the dissent can make any colorable argument that the result in this case is "inconsistent with substantial justice." [29] *See* HRCP Rule 61. Consequently, the dissent's formulation upends the objectives of Rule 61. In insisting on a mechanistic application of procedural requirements, regardless of whether the court's ultimate judgment was consistent with substantial justice, the dissent opens all judgments to collateral attack. It ignores the command in HRCP Rule 61 that "a judgment or order" is not to be "disturb[ed]" unless inconsistent with substantial justice.

## IX.

The dissent's formulation is at its core, no different from the harmless error analysis. But the dissent's construct misapplies HRS § 657–5 and undermines the precedents established in our cases on notice defects discussed *supra* and calls into question their viability.

The dissent does not explain why lack of notice in this case was harmful, or why the notice requirement under HRS § 657–5 is absolute while the requirement under HRCP Rule 56(c) is subject to a harmless error analysis. Anomalously, the dissent states that because Petitioner "has actual notice of [Respondent's] motion to extend . . . the statute's notice requirement has *now* been satisfied." *See* dissenting opinion at 31, 200 P.3d at 400 (emphasis added). This after-the-fact formulation incongruously rests on the same facts that this opinion says rendered the notice error *harmless*. Consequently, the dissent reaches the *same result as would obtain in a harmless error analysis, see id.* at 31–32, 200 P.3d at 400–01, because its formulation is intrinsically a harmless error one.

## A.

The dissent argues that "the circuit court did not have jurisdiction to grant [Respondent's] motion *before* [Petitioner] was afforded notice" and yet "the circuit court *would have jurisdiction* to grant the motion on remand, because [Petitioner] *has now been afforded such notice.*" *Id.* at 31, 200 P.3d at 400 (emphases added). But the dissent's contention that the requirements have "now been satisfied" is a concession that undercuts its jurisdictional argument. The requirements have "now been satisfied" only because Petitioner received notice years later when Respondent filed a notice of foreign judgment in the district court in Denver, Colorado. Under those circumstances, it cannot reasonably be argued as the dissent does "that HRS § 657–5's requirements, including its notice requirement, have now been satisfied," *id.* at 31, 200 P.3d at 400, without doing violence to the ordinary language of the statute. The only way to reconcile this circumstance is to deem the initial failure to give notice as harmless. In essence, what the dissent refers to as "harmful [error] *per se* " is in fact rendered harmless error under its own formulation.

---

**29.** As explained at length *supra,* Petitioner's "substantial rights" were not affected here. Initially, he was provided notice of the original action and failed to defend it. Then, although he was not timely provided notice of extension, he was subsequently put on notice and filed a Rule 60(b) motion to set aside the judgment. In the course of his motion and the Rule 60(b) hearing, he made no argument in his defense on the merits, or ever claimed that the original judgment was faulty or that he had ever attempted to satisfy the judgment. Nor has he made any such argument on appeal to the ICA or to this court. At this point, Petitioner has had more than sufficient process.

## B.

Furthermore, the dissent's mechanistic approach elevates form over substance. Although the dissent maintains that "[Petitioner] *had* to receive notice of the motion *before* the circuit court could grant [Respondent's] motion[,]" the dissent relies on notice the Respondent received *after the fact* to supply "jurisdiction to grant the motion on remand[.]" *See id.* at 31, 200 P.3d at 400 (emphases added). Thus, the dissent maintains that even though the court was without jurisdiction to grant the motion previously, because Petitioner gained notice years after the fact by other means, the court's jurisdiction to grant the very same motion has "now" been restored. This exercise is a meaningless one, because the dissent voids a judgment, then resurrects it on the same basis on which it voided the judgment.

## C.

Additionally, the dissent's construct is antithetical to its own jurisdictional argument. If, as the dissent maintains, failure of notice is "harmful *per se*," and a jurisdictional defect, *see id.* at 27, 200 P.3d at 396, then the order must be void because, under the dissent's theory, the court lacked jurisdiction to enter it. If the order was void for lack of jurisdiction, the case must be dismissed. The case cannot be remanded *in the same proceeding* to a court that the dissent has determined lacked jurisdiction because of the failure to give notice. *See, e.g., Hawaii Home Infusion Assocs. v. Befitel*, 114 Hawai'i 87, 93, 157 P.3d 526, 532 (2007) (holding that "initiating an HRS § 91–7 action in the wrong circuit is a defect of jurisdiction mandating dismissal [and a]ccordingly, we vacate the first circuit court's judgment and remand with instructions to dismiss [the] declaratory action"); *Korean Buddhist Dae Won Sa Temple of Hawaii v. Concerned Citizens of P;alolo*, 107 Hawai'i 371, 384, 114 P.3d 113, 126 (2005) (holding that circuit court's judgment was void for lack of jurisdiction, retaining jurisdiction solely to correct court's error in assuming jurisdiction, and thereby remanding to the circuit court to dismiss for lack of jurisdiction); *Ditto v. McCurdy*, 103 Hawai'i 153, 157, 80 P.3d 974, 978 (2003) ("it is well settled that an appellate court is under an obligation to ensure that it has jurisdiction to hear and determine each case and to dismiss an appeal on its own motion where it concludes it lacks jurisdiction ... [and t]herefore, [w]hen we perceive a jurisdictional defect in an appeal, we must, *sua sponte,* dismiss that appeal") (internal quotation marks and citations omitted).

If the case must be dismissed, then Respondent must refile its motion to extend. *See Eto*, 99 Hawai'i at 502–03, 57 P.3d at 427–28 (holding that where first case was dismissed without prejudice, second complaint was not an amendment but was a new filing for statute of limitations purposes and therefore time-barred); *Clary Corp. v. Smith*, 949 S.W.2d 452, 459 (Tex.App.1997) (holding that where the plaintiffs were dismissed from a previous action due to lack of jurisdiction, "it was as if they had never filed suit," and, therefore, the second complaint "was a new lawsuit because it was made post-dismissal").

## D.

The dissent however "do[es] not believe it necessary for [Respondent] to file a new motion on remand." Dissenting opinion at 31, 200 P.3d at 400. The dissent cites *Clarke* for the proposition that the case could be remanded on the premise that in *Clarke* the error was harmful per se. *Id.* at 32, 200 P.3d at 401. But first, as discussed *supra, Clarke* did not hold that a defective *notice* was *harmful per se. See* 50 Haw. at 170, 434 P.2d at 313. Second, in clarifying *Clarke, Jensen* expressly held that failure of notice was subject to "actual harm" analysis, whereas the lack of a hearing and *not* failed notice was the defect that was "harmful per se." *See* 53 Haw. at 202, 491 P.2d at 548. Third, *Querubin* concluded that where there was *no notice* this court on review would determine whether the appellants had been "actually prejudiced," not that such notice defect was deemed *harmful per se. See* 107 Hawai'i at 59, 109 P.3d at 700.

Furthermore, in the other cases relied upon by the dissent, there is no indication that upon remand the court could then do

what it was without jurisdiction to do in the first instance. In *Wong Kwai Tong*, because the circuit court did not have power under the divorce statute to enter that order, it was void. *See* 31 Haw. at 609. No set of circumstances could have changed the court's authority such that remand would have been appropriate. Similarly, *Cooper* provides no support for remand and reinstatement following the voiding of a judgment because this court concluded in that case that the provision at issue *was not void. See* 70 Haw. at 454, 776 P.2d at 1182.

The federal cases relied on by the dissent also do not provide any support for the argument that the court could do the very thing it was held not to have power to do upon remand and based upon the same motion. In *Indoor Cultivation*, the only power the court had on remand was to "vacate[ ] the judgment under [FRCP] Rule 60(b)(4) and return[ ] the conveyances...." 55 F.3d at 1317. There was no action the court could take pursuant to the government's infirm complaint. Finally, in *Carter*, the Fifth Circuit did not remand but "affirm[ed] the district court's decision, finding that the district court [ ] properly set aside the consent judgment pursuant to [FRCP] Rule 60(b)(4)[.]" 136 F.3d at 1012. There was no suggestion that the same consent judgment could be reinstated upon remand. Therefore, the dissent's cases do not support the proposition that the court could "grant[ ] [Respondent's] motion to extend the deficiency judgment on remand." Dissenting opinion at 31, 200 P.3d at 400.

### E.

HRS 657–5 provides that "[n]o extension of a judgment or decree shall be granted unless the extension is *sought within ten years of the date the original judgment or decree was rendered.*" (Emphasis added.) The original judgment was entered on December 21, 1993. Therefore, were Respondent to attempt to refile or reinstate its motion after the extension order was set aside for lack of jurisdiction under the dissent's formulation, the second filing or reinstatement of the motion to extend would fall outside of the ten-year statutory period. Under the dissent's view,

Respondent would be entitled to reinstate or resort to its motion "ad infinitum." *See Sluka v. Herman*, 229 Neb. 200, 201–02, 425 N.W.2d 891, 892 (1988).

In *Eto*, this court held that, although the Plaintiff's first complaint had been filed within the statutory period, but dismissed due to lack of service, the Plaintiff's second complaint, which was identical to the first, was time-barred as it was filed outside the statute of limitations. 99 Hawai'i at 502–03, 57 P.3d at 427–28. This court stated that "if a court dismisses an initial action, the applicable statute of limitations does not toll unless a savings statute exists which provides for the filing of the second action within a specific amount of time[.]" *Id.* at 502, 57 P.3d at 427 (footnote omitted); *see also Sluka*, 229 Neb. at 202, 425 N.W.2d at 892 (stating that "the filing of a petition does not toll the running of a statute of limitations for the purpose of bringing subsequent actions on the same set of facts" and "[t]o interpret the law in that fashion would create a situation in which a plaintiff could file, have dismissed, refile, and have dismissed, an action, ad infinitum"); *Clary*, 949 S.W.2d at 459 (holding that "[w]hen a cause of action is dismissed [for want of jurisdiction] and later refiled, limitations are calculated to run from the time the cause of action accrued until the date that the claim is refiled ... because a dismissal is equivalent to a suit never having been filed"). Consequently, Respondent would be precluded from refiling the motion to extend as it would be untimely.

Following the dissent's rationale, if Respondent were allowed to refile or reinstate its motion after the statutory period had in fact run, the statutory mandate that "[n]o extension of a judgment or decree shall be granted unless the extension is sought within ten years" would be nullified. *See* HRS § 657–5. Under the dissent's formulation, Respondent is allowed to reinstate its motion for an extension of judgment *after* the time for seeking an extension had expired. The dissent's approach then would have far reaching adverse consequences for the viability of HRS § 657–5.

### X.

HRS § 657–5 required that Respondent provide notice to Petitioner prior to entry of

the extension of judgment. However, on the facts of this case, the court's extension of judgment was harmless error because Petitioner had an opportunity to be heard in his HRCP Rule 60(b) hearing, offered no defense on the merits to the original judgment or to the judgment extension, and therefore has not demonstrated any prejudice resulting from the lack of notice. Accordingly, for the reasons stated above, the March 30, 2008 judgment of the ICA is affirmed.

Concurring and Dissenting Opinion by LEVINSON, J., with whom NAKAYAMA, J., joins.

I agree with much of the majority's analysis, particularly its conclusion that the first circuit court erred in granting the motion filed by the plaintiff-appellee-respondent Bank of Hawaii (the Bank) to extend its December 21, 1993 deficiency judgment against the defendant-appellant-petitioner Michael L. Shinn, because he was not afforded notice of the Bank's motion to extend before it was granted by the circuit court, in contravention of Hawai'i Revised Statutes (HRS) § 657–5 (Supp.2001).[1] Majority opinion at 3–4, 5–6, 23–24, 200 P.3d at 372–73, 374–75, 392–93. I part ways with the majority because it holds that the error did not require the circuit court to set aside the extension of the deficiency judgment pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 60(b)(4) on the ground that the extension was void. *Id.* at 3, 8–24, 200 P.3d at 372, 377–93.

## I. DISCUSSION

A. *The ICA Erred In Concluding That The Circuit Court Did Not Abuse Its Discretion In Denying Shinn's Motion To Set Aside The Order Extending The Deficiency Judgment On The Ground That The Extension Was Void.*

HRCP Rule 60(b)(4) provides in relevant part that, "[o]n motion and upon such terms

as are just, the court may relieve a party . . . from a final judgment . . . for the [reason that] . . . the judgment is void." "If a judgment is only void in part and the void portion can be separated from the balance, relief may be granted to that extent." *McGrew v. McGrew*, 139 Idaho 551, 82 P.3d 833, 841 (2003) (interpreting the Idaho counterpart to HRCP Rule 60(b)(4)). The majority concludes that the extended deficiency judgment at issue in the present matter is not void insofar as, in the majority's view, the circuit court's violation of HRS § 657–5 was "harmless," majority opinion at 3, 8–24, 200 P.3d at 372, 377–93, because "the circumstances surrounding [Shinn's] case do not rise to the level of seriousness necessary to justify voiding the judgment," *id.* at 11, 200 P.3d at 380. In this connection, the majority relies upon *In re Genesys Data Technologies, Inc.*, 95 Hawai'i 33, 40, 18 P.3d 895, 902 (2001), wherein this court explained that the violation of a notice provision is so serious as to render a judgment void if the violation deprives a party of due process. Thus, the majority implicitly concludes that the circuit court's violation of HRS § 657–5 was harmless inasmuch as the violation did not offend Shinn's due process rights. *See* majority opinion at 11, 200 P.3d at 380. Indeed, the remaining cases upon which the majority relies in its harmless-error analysis similarly address whether a party was deprived of due process of law or at least of an opportunity to be heard. *See id.* at 8–11, 200 P.3d at 377–80 (citing *Korean Buddhist Dae Won Sa Temple v. Sullivan*, 87 Hawai'i 217, 245, 953 P.2d 1315, 1343 (1998); *Stafford v. Dickison*, 46 Haw. 52, 58–61, 374 P.2d 665, 669 (1962); *Blaney v. West*, 209 F.3d 1027, 1031–32 (7th Cir.2000); *Ruiz Varela v. Sanchez Velez*, 814 F.2d 821, 823 (1st Cir.1987); *Whale v. United States*, 792 F.2d 951, 952 (9th Cir.1986)).[2] I agree with the majority insofar as it concludes that, under those cases and *Genesys*, Shinn's due process rights were not violated by the extension of the judgment without

---

1. HRS § 657–5 provides in relevant part that "[n]o extension [of a judgment or decree] shall be granted without notice and the filing of a nonhearing motion or a hearing motion to extend the life of the judgment or decree."

2. *See also* majority opinion at 16–17, 200 P.3d at 385–86 (citing *Nishitani v. Baker,* 82 Hawai'i

notice. *See id.* at 3, 8–12, 200 P.3d at 372, 377–81. But neither *Genesys* nor any of the other cases cited by the majority in its harmless-error analysis considered whether a court's judgment was void because the court exceeded its authority in entering the judgment. That is precisely the alternative question that Shinn has presented to us in the case at bar. Specifically, in addition to asserting that his due process rights were violated, Shinn argues that the deficiency judgment is void insofar as it was extended in contravention of HRS § 657–5, because the circuit court did not have authority under the statute to extend the judgment without notice. The question is thus whether a court's judgment is void when the court exceeds its authority in entering the judgment.

This court decided a similar question in *Wong Kwai Tong v. Choy Yin,* 31 Haw. 603 (Terr.1930). In that case, a divorced ex-husband was ordered to pay his ex-wife alimony and to grant her the right to occupy the home where she was residing, pursuant to Revised Laws of Hawaii (RLH) § 2979 (1925). *Id.* at 604–05. The statute provided that the circuit court could order that the ex-husband provide the ex-wife with a "suitable allowance." *Id.* at 605–06. It did not, however, empower the court to order a division of the ex-husband's real estate or to vest title to a part thereof in the ex-wife. *Id.* at 606. The ex-husband did not appeal the divorce decree, but instead attacked the order collaterally. *Id.* at 606–09. The question before this court was whether the circuit court's order was void. *Id.* This court explained that, "even when a court has jurisdiction over the parties and the subject matter, … it may lack jurisdiction to make the particular decree which it attempts to make; and in such a case the particular decree made in excess of jurisdiction is void and may be attacked collaterally." *Id.* at 606. In other words, " '[a]lthough a court may have jurisdiction over the parties and the subject matter, … if it makes a decree which is not within the powers granted to it by the law of

its organization, its decree is void.' " *Id.* (quoting *United States ex rel. Wilson v. Walker,* 109 U.S. 258, 266, 3 S.Ct. 277, 27 L.Ed. 927 (1883)). With respect to the facts before it, this court observed that the circuit court's error was jurisdictional, as opposed to merely procedural, in nature. *Id.* This court held that, although the circuit court had jurisdiction over the parties and the general subject matter of the action, the circuit court acted in excess of its statutory jurisdiction by setting apart the ex-husband's interest in real property to the ex-wife because it had no power under RLH § 2979 to order a division of the ex-husband's real estate or to vest title to it in the ex-wife. *Id.* at 606, 609. The circuit court's order was therefore void. *Id.* at 606–09.

This court employed a comparable analysis in *Cooper v. Smith,* 70 Haw. 449, 450, 776 P.2d 1178, 1179 (1989), in which a husband and wife were divorced, but the divorce decree reserved the disposition of marital assets for a later time. Three years later, the ex-husband and ex-wife executed a settlement agreement, which the family court approved and incorporated into the divorce decree. *Id.* As amended, the decree provided that the ex-husband would pay the ex-wife alimony and that the ex-wife would have an option to purchase stock in the ex-husband's company from the ex-husband at an extremely favorable price if he failed to pay alimony in a timely fashion. *Id.* at 450–52, 776 P.2d at 1179–80. When the ex-husband failed timely to pay alimony, the ex-wife brought suit in circuit court to exercise her option to purchase his stock. *Id.* at 452, 776 P.2d at 1180. The ex-husband moved for summary judgment on the ground that the option provision was a penalty and thus unenforceable. *Id.* at 452–53, 776 P.2d at 1180. The circuit court agreed and voided the provision in the decree. *Id.* at 453, 776 P.2d at 1180. On appeal, this court addressed whether the provision was void. *Id.* at 450, 453–55, 776 P.2d at 1179–82. We observed that a judgment is " 'void only if the court that rendered it lacked jurisdiction of the subject matter, or

281, 291–92, 921 P.2d 1182, 1192–93 (App. 1996); *Isemoto Contracting Co. v. Andrade,* 1 Haw.App. 202, 206–07, 616 P.2d 1022, 1026

(1980); *Farm Credit Bank of Baltimore v. Ferrera–Goitia,* 316 F.3d 62, 68 (1st Cir.2003)).

of the parties, or if it acted in a manner inconsistent with due process of law.'" *Id.* at 454, 776 P.2d at 1181 (quoting 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2862, at 198–200 (1973)). We concluded that nothing in the record indicated that the decree was afflicted with any of the enumerated infirmities. *Id.* We additionally determined that, although neither the parties nor the circuit court had discussed the implications of HRS § 580–56 (1985), the statute did not deprive the family court of its authority to incorporate the settlement agreement into the decree. *Id.* at 454 n. 1, 776 P.2d at 1181 n. 1. The statute stated that, "after 'the elapse of one year after entry of a decree or order reserving the final division of property . . ., a divorced spouse shall not be entitled . . . to any share of the former spouse's personal estate.'" *Id.* (quoting HRS § 580–56(d)) (first ellipsis in original and second ellipsis added). We noted that the statute deprived the family court of the power to divide the personal estate of the parties after the lapse of the statutorily prescribed period, but that the statute did not divest the family court of the authority to incorporate the parties' settlement agreement into the decree. *Id.* For those reasons, this court held that the circuit erred in concluding that the decree was void. *Id.* at 454, 776 P.2d at 1182.

Although this court observed in *Cooper* that the "'only'" infirmities that would render a judgment void arise from a defect relating to subject-matter jurisdiction, personal jurisdiction, or due process, *id.* at 454, 776 P.2d at 1181 (quoting 11 Wright & Miller, *Federal Practice and Procedure* § 2862, at 198–200), our analysis of whether HRS § 580–56(d) deprived the family court of the authority to modify the divorce decree suggests that a court's judgment may also be void when it is entered without authority, *see id.* at 454 n. 1, 776 P.2d at 1181 n. 1. That analysis is indeed consistent with *Wong Kwai Tong,* in which this court explicitly held that a court's judgment is void when it exceeds its jurisdiction in entering a particular decree. *See* 31 Haw. at 606. It is also consistent with the federal courts' understanding of the circumstances under which a judgment is "void" for purposes of Federal

Rules of Civil Procedure (FRCP) Rule 60(b)(4). Just as this court concluded in *Wong Kwai Tong,* the United States Courts of Appeal for the Fifth and Seventh Circuits have determined that "a judgment may be void for purposes of Rule 60(b)(4) if the court, although having jurisdiction over the parties and subject matter, entered a decree 'not within the powers granted to it by the law.'" *United States v. Indoor Cultivation Equip. from High Tech Indoor Garden Supply,* 55 F.3d 1311, 1316–17 (7th Cir.1995) (quoting *Walker,* 109 U.S. at 266, 3 S.Ct. 277, and holding that a default judgment in a forfeiture proceeding was void pursuant to FRCP Rule 60(b)(4), because the district court had no authority to enter the judgment, insofar as the government failed to file a forfeiture complaint within sixty days after the defendant claimed the property, as required by 21 U.S.C. § 888(c), which specifically directed that the forfeiture not take place if the government failed to comply with that requirement); *accord Carter v. Fenner,* 136 F.3d 1000, 1005, 1007–09 (5th Cir.1998) (following *Indoor Cultivation Equip.,* 55 F.3d at 1316, and holding that a consent judgment between a municipality and a minor's tutor was void under FRCP Rule 60(b)(4), because the minor's tutor failed to obtain prior court approval before settling the minor's claim, as required by a Louisiana statute); *cf. Wong Kwai Tong,* 31 Haw. at 606 (quoting *Walker,* 109 U.S. at 266, 3 S.Ct. 277). FRCP Rule 60(b)(4) is identical to HRCP Rule 60(b)(4). "'[W]here a Hawaii rule of civil procedure is identical to the federal rule, the interpretation of that rule by the federal courts is highly persuasive.'" *County of Kauai v. Baptiste,* 115 Hawaiʻi 15, 33, 165 P.3d 916, 934 (2007) (quoting *Pulawa v. GTE Hawaiian Tel,* 112 Hawaiʻi 3, 20 n. 15, 143 P.3d 1205, 1222 n. 15 (2006)) (some brackets added and some omitted). Therefore, the federal appellate decisions interpreting the term "void," as it appears in FRCP Rule 60(b)(4), strongly suggest that a judgment is void pursuant to HRCP Rule 60(b)(4) where a court exceeded its authority to enter a particular judgment. *See id.; Indoor Cultivation Equip.,* 55 F.3d at 1316; *Carter,* 136 F.3d at 1005. In light of the foregoing federal decisions as well as this court's decisions in *Coo-*

*per* and *Wong Kwai Tong,* I do not believe that a judgment is void " 'only' " if the court that entered it lacked subject-matter or personal jurisdiction or if the court acted in a manner inconsistent with due process of law. *See Cooper,* 70 Haw. at 454, 776 P.2d at 1181 (quoting 11 Wright & Miller, *Federal Practice and Procedure* § 2862, at 198–200). Rather, even if a court had personal and subject-matter jurisdiction and even if it acted in a manner consistent with due process of law, a court's judgment is nevertheless void where the court exceeded its jurisdiction in entering the judgment. *See id.* at 454 n. 1, 776 P.2d at 1181 n. 1; *Wong Kwai Tong,* 31 Haw. at 606; *Indoor Cultivation Equip.,* 55 F.3d at 1316; *Carter,* 136 F.3d at 1005.

The question becomes whether the circuit court's violation of HRS § 657–5 in ordering the extension of the Bank's deficiency judgment without the required notice to Shinn was "jurisdictional" or merely "procedural" in nature. *See Wong Kwai Tong,* 31 Haw. at 606. While it is true that *Wong Kwai Tong, Cooper, Indoor Cultivation Equipment,* and *Carter* are factually different from the matter before us in that they did not involve the violation of a notice requirement, *see* majority opinion at 12–17, 200 P.3d at 381–86, our decisions interpreting HRCP Rule 56(c) illustrate that such a violation may, in some circumstances, give rise to a jurisdictional defect. The rule requires that a motion for summary judgment be served within a certain period before the time set for the hearing on the motion. HRCP Rule 56(c). We construed this requirement in *Clarke v. Civil Service Commission,* 50 Haw. 169, 434 P.2d 312 (1967). In that case, a state employee was informed by the director of institutions that he had been dismissed from his position. *Id.* at 169, 434 P.2d at 312. The employee appealed his dismissal to the civil service commission, which upheld the dismissal. *Id.* at 169, 434 P.2d at 312–13. The employee proceeded to appeal the commission's ruling to the circuit court, *id.* at 169–70, 434 P.2d at 313, and, at a pretrial conference, the circuit court instructed the parties to file memoranda on points of law, *id.* at 170, 434 P.2d at 313. After reviewing the memoranda, the circuit court decided to treat the commis-

sion's memorandum as a motion for summary judgment and thereupon dismissed the appeal. *Id.* On an appeal to this court, the employee maintained that the circuit court had committed reversible error when it granted summary judgment on its own motion without giving him an opportunity to be heard on the matter. *Id.* We explained that, if the circuit court had the "power and authority" to grant summary judgment *sua sponte,* such power could only be exercised in compliance with the provisions of HRCP Rule 56. *Id.* at 171, 434 P.2d at 313. We observed that the rule required that the time for a hearing be fixed, that the adverse party be given notice of such setting, and that a hearing in fact be held on the matter. *Id.* In determining the consequence of violating these requirements, we drew inspiration from caselaw interpreting the federal counterpart to HRCP Rule 56 and explained that "[i]t is a well-settled proposition in federal courts that the notice and hearing requirements [of FRCP Rule 56] are far more than mere formalities and that, in the absence of such notice and hearing, the court is without jurisdiction to grant summary judgment." *Id.* In light of that proposition, we held that the circuit court erred in dismissing the appeal without notice and without a hearing on the matter, contrary to the provisions of HRCP Rule 56. *Id.* Such an error is harmful *per se. See Jensen v. Pratt,* 53 Haw. 201, 202, 491 P.2d 547, 548 (1971) (citing, *inter alia, Clarke,* 50 Haw. 169, 434 P.2d 312, in holding that the circuit court's dispensing with the opportunity to be heard orally on a motion for summary judgment, contrary to the requirement of HRCP Rule 56(c), so strongly affected the substantial rights of the parties as to constitute harmful error *per se* ).

The majority maintains that this court's primary concern in *Clarke* was the fact that the employee had not had an opportunity to be heard on the merits of the motion for summary judgment. Majority opinion at 17, 200 P.3d at 386. The majority concludes that the absence of a hearing was this court's chief consideration, given that the employee's argument on appeal was that circuit court erred when it granted summary judgment on its own motion without giving him an oppor-

tunity to be heard on the matter. *Id.* (quoting *Clarke*, 50 Haw. at 170, 434 P.2d at 313). While the lack of a hearing may have been the employee's primary concern, this court was equally concerned with the absence of notice. *See Clarke*, 50 Haw. at 170–71, 434 P.2d at 313. It was for that reason that we observed (1) that HRCP Rule 56 required the adverse party to be given notice of the hearing, (2) that, in the absence of "notice and hearing," the court was without jurisdiction to grant summary judgment, and (3) that the circuit court therefore erred in dismissed the appeal "without notice and without a hearing." *Id.* at 171, 434 P.2d at 313. Accordingly, I do not believe that we were primarily concerned with the absence of a hearing in *Clarke*. The majority's cramped reading of our holding in *Clarke* attempts to sidestep the issue. *See* majority opinion at 17–18, 200 P.3d at 386–87. Indeed, while the majority does articulate our holding that the circuit court erred in dismissing the appeal without notice and without a hearing in contravention of HRCP Rule 56, *id.* at 17, 200 P.3d at 386, it does not address the jurisdictional principle upon which that holding was premised: "It is well-settled in federal courts that the notice and hearing requirements [of FRCP Rule 56] are far more than mere formalities and that, in the absence of such notice and hearing, the court is without jurisdiction to grant summary judgment." *Clarke*, 50 Haw. at 171, 434 P.2d at 313; majority opinion at 17–18, 200 P.3d at 386–87. It seems to me that, after *Clarke*, it is also "well-settled" in the Hawai'i courts that the notice and hearing requirements of HRCP Rule 56 are far more than mere formalities and that, in the absence of such notice and hearing, our courts are without jurisdiction to grant summary judgment. *See Clarke*, 50 Haw. at 171, 434 P.2d at 313; *see also Querubin v. Thronas*, 107 Hawai'i 48, 57, 109 P.3d 689, 698 (2005) (quoting *Clarke*, 50 Haw. at 170–71, 434 P.2d at 313).

Following *Clarke*, we decided *Shelton Engineering Contractors, Ltd. v. Hawaiian Pacific Industries*, 51 Haw. 242 246, 456 P.2d 222, 225 (1969), in which a party was served with a motion for summary judgment five days before the date set for hearing, when HRCP Rule 56(c) required ten days' prior notice.[3] This court explained that, although the movant did not literally comply with the notice requirement of the rule, he had "complied substantially." *Id.* We held that, because the non-moving party had not shown that he had been harmed by not having a full ten days' notice, we would not disturb the entry of summary judgment on the ground that HRCP Rule 56(c) had been violated. *Id.* And in *Jensen*, we further clarified the *Shelton* rule, explaining that the "proper standard of review under [HRCP] Rule 56(c) is to treat periods of notice of less than ten days as non-prejudicial, in the absence of a showing of actual harm." 53 Haw. at 202, 491 P.2d at 548.

Most recently, in *Querubin v. Thronas*, 107 Hawai'i 48, 109 P.3d 689 (2005), we surveyed the foregoing cases in addressing whether the circuit court erred in granting summary judgment in favor a defendant without giving the plaintiffs notice or an oral hearing. The plaintiffs were injured in an automobile accident, which allegedly resulted from the defendant's negligent maintenance of a hedge on his property. *Id.* at 51, 109 P.3d at 692. When the plaintiffs filed a lawsuit against the defendant, the defendant in turn filed a third-party complaint against the County of Kaua'i, asserting that the portion of the hedge that allegedly caused the accident was located on land owned by the county. *Id.* at 52, 109 P.3d at 693. The county moved for summary judgment as to the third-party complaint on the basis that the hedge was not a contributing factor in the plaintiffs' automobile accident. *Id.* at 53, 109 P.3d at 694. The defendant filed a joinder in the county's motion for summary judgment based on his belief that the presence or maintenance of the hedge was not a contrib-

---

3. HRCP Rule 56(c) was subsequently amended in 1996 to require that the motion be served within fifteen days of the time set for hearing. Order Amending the Hawai'i Rules of Civil Procedure (Sept. 11, 1996). And, in 1997, the rule was further amended to require that the motion be served within eighteen days of the time set for hearing. Order Amending Rules 6(d) and 56(c) of the Hawai'i Rules of Civil Procedure (May 15, 1997).

uting factor in the plaintiff's accident. *Id.* at 54, 109 P.3d at 694. The plaintiffs filed a statement of no position regarding the county's motion for summary judgment. *Id.* The circuit court granted the motion and thereafter entered an order granting the defendant's motion for summary judgment via joinder. *Id.* The circuit court reasoned that, by filing a statement of no position with respect to the county's motion for summary judgment, the plaintiffs had conceded that the hedge was not a contributing factor in the accident. *Id.* On appeal, we surveyed the Hawaiʻi cases interpreting HRCP Rule 56's hearing and notice requirements, including *Clarke* and *Jensen*. *Id.* at 57–59, 109 P.3d at 698–700. In discussing *Clarke*, we quoted the case's jurisdictional principle, but we added one word to the proposition as follows: " 'It is a well-settled proposition in federal courts that the notice and hearing requirements are far more than mere formalities and that, in the absence of such notice and hearing, the [circuit] court is without jurisdiction to grant summary judgment.' " *Id.* at 57, 109 P.3d at 698 (quoting *Clarke*, 50 Haw. at 170–71, 434 P.2d at 313) (brackets in original). We proceeded to discuss *Jensen's* harmless-error approach, as well as some of the ICA's HRCP Rule 56 cases. *Id.* at 57–59, 109 P.3d at 699–700. In addressing the facts at hand, we explained that the plaintiffs had no notice that the defendant was seeking summary judgment against them because he had not moved for summary judgment. *Id.* at 59, 109 P.3d at 700. We held that, because the plaintiffs were unaware that the defendant's joinder in the county's motion for summary judgment could result in the entry of summary judgment against them on their complaint against the defendant, the plaintiffs were obviously and actually prejudiced by the lack of notice. *Id.* We also held that the circuit court's failure to afford the plaintiffs an oral hearing on a motion for summary judgment was harmful *per se*. *Id.* at 60, 109 P.3d at 701.

The majority asserts that, because we did not apply *Clarke's* jurisdictional principle in

*Querubin*, where no notice was given, violations of a notice requirement, whether complete or partial, are therefore subject to harmless error analysis and are not jurisdictional in nature. Majority opinion at 19, 200 P.3d at 388. In my view, our analysis in *Querubin* illustrates that, if HRCP Rule 56's notice requirement is violated and no notice of the hearing has been given, then the violation may give rise to reversible error upon a showing of harm. We did not, however, overrule *Clarke's* jurisdictional principle *sub silentio*. Indeed, we quoted the principle in surveying our HRCP Rule 56 notice caselaw, *Querubin*, 107 Hawaiʻi at 57, 109 P.3d at 698 (quoting *Clarke*, 50 Haw. at 170–71, 434 P.2d at 313), and cited *Clarke* in holding that the circuit court erred in *sua sponte* entering an order granting summary judgment in favor of the defendant without providing the plaintiffs with notice or an oral hearing, *id.* at 60, 109 P.3d at 701 (citing, *inter alia, Clarke*, 50 Haw. at 170–70, 434 P.2d at 313). Thus, I do not believe that we jettisoned *Clarke's* jurisdictional principle in *Querubin*. If anything, we clarified that, under *Clarke*, in the absence of the notice and hearing requirements of HRCP Rule 56, " 'the [circuit] court is without jurisdiction to grant summary judgment.' " *Id.* at 57, 109 P.3d at 698 (quoting *Clarke*, 50 Haw. at 170–71, 434 P.2d at 313) (brackets in original).

To summarize, where a circuit court acts in violation of HRCP Rule 56(c)'s notice requirement, but there has been at least *some* notice of the hearing, the aggrieved party must show that he has been prejudiced by the violation. *See Shelton*, 51 Haw. at 246, 456 P.2d at 225; *see also Kau v. City & County of Honolulu*, 6 Haw.App. 370, 371–73, 722 P.2d 1043, 1045–46 (1986). But, if a circuit court acts in contravention of the rule's notice requirement and there has been *no* notice of the hearing, then prejudice need not be shown because the violation is jurisdictional in nature and thus harmful *per se*. *See Clarke*, 50 Haw. at 171, 434 P.2d at 313; *Jensen*, 53 Haw. at 202, 491 P.2d at 548.[4]

---

4. This court employs a similar framework in analyzing the notice required by a charging instrument in the criminal context. If a defendant is not charged with all of the essential elements

of an offense, the court is deprived of subject matter jurisdiction and the omission is prejudicial *per se*. *State v. Cummings*, 101 Hawaiʻi 139, 142–43, 63 P.3d 1109, 1112–13 (2003). By con-

Like HRCP Rule 56(c), HRS § 657–5 contains a notice provision. In interpreting the statute, "this court's 'foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.'" *See Kahoʻohanohano v. Depʻt of Human Servs.*, 117 Hawaiʻi 262, 288, 178 P.3d 538, 564 (2008) (quoting *Aluminum Shake Roofing, Inc. v. Hirayasu*, 110 Hawaiʻi 248, 251, 131 P.3d 1230, 1233 (2006)). The statute provides in relevant part that "[n]o extension [of a judgment] shall be granted without notice." HRS § 657–5. Its use of the word "shall" strongly implies that notice is mandatory. *See Tri–S Corp. v. W. World Ins. Co.*, 110 Hawaiʻi 473, 490, 135 P.3d 82, 99 (2006) ("'The term "shall" is ordinarily used in a mandatory sense.'" (quoting *Taomae v. Lingle*, 108 Hawaiʻi 245, 251, 118 P.3d 1188, 1194 (2005))). Thus, the statute requires that a judgment creditor put the judgment debtor on notice of a motion to extend the judgment before the motion is granted. *See* HRS § 657–5; *see also* majority opinion at 8, 200 P.3d at 377. In the present matter, when the Bank filed a motion to extend the deficiency judgment, it did not afford Shinn any sort of notice of the motion. It thus failed to comply altogether with the statute's notice requirement. There is simply no evidence in the record that Shinn was afforded any notice before the circuit court granted the motion. Hence, the circuit court exceeded its jurisdiction under HRS § 657–5 when it granted the motion and ordered the extension of the judgment. *See Clarke*, 50 Haw. at 171, 434 P.2d at 313;[5] *Jensen*, 53 Haw. at 202, 491 P.2d at 548; *cf. Carter*, 136 F.3d at 1007–09.[6] That jurisdictional defect is harmful *per se*, *see Clarke*, 50 Haw. at 171, 434 P.2d at 313; *Jensen*, 53 Haw. at 202, 491 P.2d at 548, and renders the extension of the judgment void for purposes of HRCP Rule 60(b)(4), *see Cooper*, 70 Haw. at 454 n. 1, 776 P.2d at 1181 n. 1; *Wong Kwai Tong*, 31 Haw. at 606; *Indoor Cultivation Equip.*, 55 F.3d at 1316; *Carter*, 136 F.3d at 1005; *McGrew*, 82 P.3d at 841. A court necessarily abuses its discretion when it fails to set aside a void judgment. *See Indoor Cultivation Equip.*, 55 F.3d at 1317; *Carter*, 136 F.3d at 1005. I would therefore hold that the circuit court abused its discretion in denying Shinn's HRCP Rule 60(b)(4) motion inasmuch as the motion sought to set aside the order extending the judgment. *See Buscher v. Boning*,

---

trast, if the charging instrument simply omits a word rather than an essential element, a defendant who challenges the omission for the first time on appeal must demonstrate substantial prejudice. *Id.*

5. The majority maintains that *Clarke* is distinguishable from the case at bar on the ground that, in *Clarke*, the plaintiff did not receive notice or an opportunity to raise defenses in the original proceeding. Majority opinion at 18, 200 P.3d at 397. In the present matter, while it is true that Shinn did have an opportunity to raise defenses in the proceedings that resulted in the entry of the deficiency judgment, it is also true that he had no notice of the Bank's motion to extend the deficiency judgment and had no opportunity to oppose the Bank's motion before it was granted by the circuit court.

6. The majority asserts that *Carter* is distinguishable from the present case. Majority opinion at 16 n. 25, 200 P.3d at 385 n. 25. In *Carter*, as previously stated, the Fifth Circuit held that a consent judgment between a municipality and a minor's tutor was void under FRCP Rule 60(b)(4), because the minor's tutor failed to obtain prior court approval before settling the minor's claim, as required by a Louisiana statute.

136 F.3d at 1007–09. The majority contends that *Carter* is distinguishable from the present matter, in part because the validity of the consent judgment in that case was determined by Fifth Circuit precedent on the issue. Majority opinion at 16 n. 25, 200 P.3d at 385 n. 25. As the majority observes, before deciding *Carter*, the Fifth Circuit had previously held in *Johnson v. Ford Motor Co.* that "'[c]ompromises entered into absent [the protections of the Louisiana statute] are of no legal effect.'" *Carter*, 136 F.3d at 1006 (quoting *Johnson v. Ford Motor Co.*, 707 F.2d 189, 194 (5th Cir.1983)) (emphasis omitted), *quoted in* majority opinion at 16 n. 25, 200 P.3d at 385 n. 25. The majority maintains that we have no such precedent respecting the notice requirement set forth in HRS § 657–5. Majority opinion at 16 n. 25, 200 P.3d at 385 n. 25. While it is true that we have not held that an extension of a judgment in contravention of the statute's notice requirement renders the extension a legal nullity, *see id.*; *cf. Carter*, 136 F.3d at 1006, we did hold in *Clarke* that the failure to observe the notice and hearing requirements set forth in HRCP Rule 56(c) deprived the circuit court of the jurisdiction to grant summary judgment, 50 Haw. at 171, 434 P.2d at 313. That is the precedent that I find instructive in the present matter.

114 Hawai'i 202, 211, 159 P.3d 814, 823 (2007).

### B. *The Circuit Court May Rule On The Bank's Motion On Remand Now That Shinn Has Notice Of The Motion:*

Although the circuit court abused its discretion in refusing to set aside the order extending the judgment on the ground that Shinn was not afforded notice of the Bank's motion to extend the deficiency judgment prior to its extension, as required by HRS § 657–5, it is undisputed that Shinn presently has actual notice of the Bank's motion to extend. Therefore, the statute's notice requirement has now been satisfied. Its two remaining requirements have been satisfied as well. First, HRS § 657–5 states that "[n]o extension of a judgment or decree shall be granted unless the extension is sought within ten years of the date the original judgment or decree was rendered." Thus, in order for the circuit court to grant an extension of a judgment, the extension must be "sought" within ten years of the date of the judgment. The statute does not require that the circuit court actually *grant* the extension before the expiration of the ten-year period. In the present matter, the original deficiency judgment was entered on December 21, 1993. On December 10, 2003, the Bank "sought" to extend the judgment when it filed its motion. Thus, the motion was "sought" within the ten-year period prescribed by HRS § 657–5. Second, the statute provides that "[a] court shall not extend any judgment or decree beyond twenty years from the date of the original judgment or decree." In this case, because the judgment was entered on December 21, 1993, an extension, which was "sought" within ten years of its entry, may be granted prior to December 21, 2013. Accordingly, the three conditions set forth in HRS § 657–5 have now been satisfied. Hence, I do not believe that any of the statute's provisions would preclude the circuit court from granting the Bank's motion to extend the deficiency judgment on remand.

The majority asserts that my conclusion that HRS § 657–5's requirements, including its notice requirement, have now been satisfied, such that the statute would not present-

ly prevent the circuit court from granting the Bank's motion on remand, is incongruent with my earlier determination that the circuit court's grant of the Bank's motion before the statute's notice requirement had been satisfied was, at that point, a jurisdictional defect and thus harmful *per se, see supra* section I.A. Majority opinion at 21, 200 P.3d at 390. While Shinn did ultimately receive notice of the proceeding to extend the deficiency judgment, he only received the notice *after* the Bank's motion had already been granted. The statute's notice requirement mandated that Shinn receive notice *before* the motion was granted. *See supra* section I.A. The jurisdictional defect, and thus the harmful error, arose because he did not receive any notice of the proceeding before the motion was granted. *See id.* When Shinn received notice in relation to the circuit court's grant of the Bank's motion is the primary consideration under HRS § 657–5, which states that "[n]o extension [of a judgment or decree] shall be granted without notice." Under that provision, Shinn had to receive notice of the motion before the circuit court could grant the Bank's motion. The fact that he currently has notice and that HRS § 657–5's requirements have been met does not mean that the circuit court's grant of the Bank's motion before he had notice was harmless error. As such, I perceive no inconsistency between the notions (1) that the circuit did not have jurisdiction to grant the Bank's motion before Shinn was afforded notice of the motion as required by HRS § 657–5 and (2) that the circuit court would have jurisdiction to grant the motion on remand, because Shinn has now been afforded such notice.

Because he now has notice of the motion, I do not believe it necessary for the Bank to file a new motion on remand. The majority insists that such a motion would be required because it believes that, if the circuit court lacked jurisdiction to extend the judgment, then this case must be dismissed. Majority opinion at 22, 200 P.3d at 391. The majority cites a number of cases in which courts lacked subject-matter jurisdiction. *See id.* (citing *Hawaii Home Infusion Assocs. v. Befitel,* 114 Hawai'i 87, 93, 157 P.3d 526, 532

(2007); *Korean Buddhist Dae Won Sa Temple of Hawaii v. Concerned Citizens of Palolo,* 107 Hawai'i 371, 384, 114 P.3d 113, 126 (2005); *Ditto v. McCurdy,* 103 Hawai'i 153, 157, 80 P.3d 974, 978 (2003)). The cases upon which I rely do not, however, concern defects in subject-matter jurisdiction. Rather, they deal with situations in which courts lacked the authority, not to hear a matter altogether, but to enter a judgment, decree, or order under particular circumstances. *E.g., Wong Kwai Tong,* 31 Haw. at 606; *see also supra* section I.A. In *Clarke,* for example, we held that the circuit court lacked jurisdiction under HRCP Rule 56(c) to grant summary judgment *sua sponte* against the employee without notice or hearing. 50 Haw. at 171, 434 P.2d at 313. Yet we did not dismiss the case for lack of subject-matter jurisdiction. *See id.* There was no indication that the circuit court lacked subject-matter jurisdiction to hear the employee's appeal or to entertain a motion for summary judgment; it simply lacked jurisdiction to grant summary judgment without notice or hearing. *See id.* Instead of dismissing the action, we reversed the circuit court's judgment and remanded the case to the circuit court. *Id.* Similarly, in the present matter, while there is no dispute that the circuit court had subject-matter jurisdiction to hear this case and to entertain a motion to extend the deficiency judgment, the court did, in my view, lack jurisdiction under HRS § 657–5 to grant an extension of the deficiency judg-ment without notice. *See supra* section I.A. On that basis, I would reverse the ICA's judgment in part and remand this matter to the circuit court. I see no reason why the circuit court's lack of jurisdiction to enter judgment in the absence of notice would require us either to dismiss the present action or to dismiss the Bank's motion to extend the judgment. Because the motion is not subject to dismissal, I do not believe that the Bank would have to file a new motion to extend the judgment on remand.

## II. CONCLUSION

In light of the foregoing, I would reverse the ICA's judgment to the extent that it affirmed the circuit court's order denying Shinn's HRCP Rule 60(b)(4) motion to set aside the deficiency judgment insofar as the judgment was extended in contravention of HRS § 657–5. I would therefore remand this matter to the circuit court for proceedings consistent with this opinion. I otherwise agree with the majority's disposition of this case. *See* majority opinion at 4–5 n. 8, 24–25, 200 P.3d at 373–74, n. 8, 393–94.